PEOPLES FINANCE & THRIFT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15919.   Promulgated June 13, 1949.

*Needham A. Graham, Jr., Esq.,* for the petitioner.
*Homer F. Benson, Esq.,* for the respondent.

#### OPINION.

LeMire, *Judge*: This proceeding involves deficiencies in income tax for the calendar years 1942 and 1943 in the respective amounts of $571.90 and $644.19.  Of the several adjustments made in petitioner's taxable income for 1942 and 1943 by respondent, the only one presented for adjudication here is whether respondent erred in adding to taxable income amounts received by petitioner as payments for disability benefits under policies of health insurance owned by it as a purchaser for valuable consideration.  All of the uncontested adjustments will be taken into account under a Rule 50 decision.

The proceeding was submitted upon a stipulation of facts, which we adopt as our findings of fact and incorporate herein by reference.

The petitioner is an Alabama corporation, with its principal office at Birmingham, Alabama.  Its income tax returns for the taxable years 1942 and 1943 were filed with the collector of internal revenue for the district of Alabama, at Birmingham.

The petitioner was dissolved by other than judicial decree on December 1, 1944, but under the laws of Alabama it exists as a body corporate for a term of five years from the date of its dissolution for the purpose of prosecuting or defending claims of the corporation through its directors, acting as trustees, in the corporate name.

On May 6, 1933, Joseph Leland was indebted to petitioner upon a promissory note, then past due, which, with accrued interest, amounted to $14,992.30.  The note was secured by a pledge of certain stocks, leases, and a second mortgage.

Leland also held on that date three life insurance policies previously issued to him by the New York Life Insurance Co. in the face amounts of $7,000, $10,000, and $5,000.  The policies named Leland's estate as beneficiary.  They had no cash surrender value above the amount of loans outstanding on them and had all lapsed for nonpayment of premiums.  Two of the policies, in addition to life insurance, provided

for total and permanent annual disability benefits equal to 10 per cent of the face of the policy, for which provisions additional premiums were paid. The third policy provided for life insurance alone.

Upon Leland's agreement to assign and deliver the policies to the petitioner, to be held as additional security for his indebtedness, petitioner paid to the New York Life Insurance Co. sums amounting to $1,762.74 to reinstate the three policies. Leland then delivered and assigned them to the petitioner, with all rights and benefits to be derived from them, subject only to the loans on the policies by the insurance company, to secure the payment to petitioner of the note held by it and the advances made and to be made to reinstate the policies and to keep them in force. Petitioner paid all premiums which became due on the policies after the assignments and also paid all interest on the loans outstanding on the policies.

Petitioner maintained two accounts on its books with Leland. One account carried the amount of his note, $13,954.98, and a notation of interest due from February 10, 1932. The other carried the sums paid by petitioner to the insurance company to reinstate and to keep up the insurance policies and to pay the interest on loans to Leland from the insurance company on the policies.

Leland never voluntarily repaid any part of his indebtedness to petitioner on either the note or the insurance. However, in 1935, petitioner foreclosed the pledge on the stocks and bought them at public sale for $8,057.30, which amount it applied to the principal of the note. The balance of the principal, $5,897.68, was charged off on petitioner's books as a bad debt and taken as a deduction on its 1935 income tax return. A substantial amount of unpaid interest had accrued on the note by this time, but it had never been entered in the note account as a charge against Leland.

From May 6, 1933, until November 27, 1940, the petitioner made charges against the insurance account with Leland for all the amounts advanced to reinstate the insurance policies, to pay premiums on them, and to pay interest to the insurance company on its loans to Leland. It credited to that account premiums refunded and dividends received from the insurance company, amounts realized as dividends on the stocks held as collateral for the note account before their foreclosure and sale and as returns on the second mortgage held as collateral for the note account. It also credited to the account an aggregate amount of $3,028.37 written off and taken as bad debt deductions in 1935, 1937, and 1938. On November 27, 1940, the debit balance shown by the account was $3,850.87.

In August 1939 the insurance company determined that Leland was totally and permanently disabled from sickness, and in April 1940 advised petitioner by letter that further payment of premiums was waived

under the terms of the policies. On August 6, 1940, the insurance company tendered its check made out jointly to Leland and to petitioner in the amount of $1,700 as the first annual payment of disability benefits on the two policies providing for them.

Leland refused to endorse the check to petitioner for application on the indebtedness. After giving due notice, petitioner, proceeding under Alabama law, offered the policies for sale at public auction. As the highest bidder, petitioner itself purchased the policies for $3,625, crediting that amount to Leland's insurance account with petitioner. Thereafter petitioner furnished to the insurance company a report of the sale and transfer of the policies to petitioner, and the insurance company recognized petitioner as the sole owner of the policies and all rights and benefits under them.

Petitioner received checks from the insurance company for annual disability benefits under the policies amounting to $1,740.85 in 1942 and $1,700 in 1943. Petitioner excluded these amounts from taxable income in its returns for 1942 and 1943 on the ground that they were specifically exempted from income taxation under section 22 (b) (5) of the Internal Revenue Code.[1] Respondent added them to taxable income in those years on the ground that the claimed exemption was inapplicable.

Petitioner contends that respondent erred in including in its taxable income for 1942 and 1943 amounts received by it as disability payments under two combined policies of life and health insurance which it acquired from Leland. Petitioner's contention is based on section 22 (b) (5) of the Internal Revenue Code, which provides that amounts received through accident or health insurance as compensation for personal injuries or sickness shall not be included in gross income and shall be exempt from income taxation.

Ordinarily any doubt arising in the construction of a tax statute should be construed in favor of the taxpayer. *Gould* v. *Gould*, 245 U. S. 151. However, where the taxpayer claims an exemption from taxation, the provisions of the statute upon which he bases his claim are strictly construed in favor of the Government. *Lewellyn* v. *Harbison*, 31 Fed. (2d) 740; *Cordon* v. *United States*, 46 Fed. (2d) 719.

---

[1] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(5) COMPENSATION FOR INJURIES OR SICKNESS.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 23 (x) in any prior taxable year, amounts received, through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness, and amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country;

\* \* \* \* \* \* \*

A well founded doubt as to the meaning of an exemption statute is fatal to a claim of exemption from taxation. *Bank of Commerce* v. *State of Tennessee*, 161 U. S. 134.

Although, as petitioner contends, section 22 (b) (5) does not specifically exclude from the benefit of the exemption any class of beneficiaries, whether individuals or corporations with insurable interests, *Castner Garage, Ltd.*, 43 B. T. A. 1, we think that the intent of the statute to limit the exemption to beneficiaries of insurance policies, as such, is apparent and that it would serve no purpose of the statute to extend the exemption to purchasers for value. The intention of the statute is clearly expressed on its face to apply the exclusion granted only to beneficiaries who suffer an otherwise uncompensated loss as the direct result of the sickness or injury of an insured in whom they have an insurable interest.

Petitioner acquired its original interest in the policies by assignment to it as a creditor seeking security for the repayment of the indebtedness of the insured. If Leland had endorsed the disability payment checks over to petitioner for application on the indebtedness, they would have been recoveries on the indebtedness and would have been taxable income to the petitioner to the extent that they were recoveries of bad debts previously charged off. When the petitioner could not induce Leland to endorse the checks for disability payments to it for application on the indebtedness, it forced the sale of the policies at public auction, buying them itself. Petitioner thus became a purchaser of the insurance contracts for value, thereby terminating all possible interest of the insured in them. Petitioner's interest in the policies was the same as would have been its interest in any other property purchased for investment.

The amount paid for the policies at auction was credited against the insured's indebtedness to petitioner. Thereafter petitioner had no obligation to apply any of the proceeds of the policies to the debt, and such proceeds did not constitute recoveries of a bad debt previously charged off. *Castner Garage, Ltd., supra.* Petitioner continued to have a creditor's interest in the insured, but its receipt of the disability payments under the policies was based upon its rights as owner of the policies, not on its creditor's interest in the insured. The payments were a return on petitioner's investment in the policies. The insured's disability was still the necessary condition precedent to petitioner's continuing right to receive the payments, but that does not affect the commercial nature of the transaction as respects the petitioner.

Respondent argues that the insurance policies here involved are in reality life insurance policies and that the health insurance and life insurance features of the policies are not separable. However, the

nature of the two types of insurance coverage and the premiums paid for them are distinguishable. The benefits received through the policies were paid in accordance with the risk covered by the health insurance features of the policies. We think that the policies are combined policies of health and life insurance and that the health and life insurance features are separable. *Caster Garage, Ltd., supra; Robert O. Deming, Jr.,* 9 T. C. 383. Since the payments received by petitioner were payments under the health insurance feature of the policies, the treatment of them for tax purposes under section 22 (b) (2), Internal Revenue Code, suggested by respondent, is not appropriate here, as that section applies only to payments under life insurance, endowment policies, or annuities.

We conclude that the amounts received by petitioner in 1942 and 1943 through the policies of health insurance held by it as a purchaser for investment were returns on an investment and are taxable income to petitioner to the extent that they exceed returns of petitioner's capital investment in the policies.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DISNEY, *J.*, concurring: I concur in the result reached by the majority opinion, but it does not express completely my reasons for the conclusion reached. It seems to me that it is plain on the face of section 22 (b) (5) of the Internal Revenue Code that Congress not only never intended the result sought by the petitioner in this case, but also that it affirmatively expressed intent to prevent such a result. The effect of petitioner's view appears to be that, because the amounts involved were "received, through accident or health insurance" within the text of the statute, they are "exclusions from gross income"; but this is to neglect the further requirement: "as compensation for personal injuries or sickness." The petitioner, however, received the amounts, not to compensate for any personal injury or sickness, but as compensation (if compensation at all) for unpaid indebtedness from Leland. Indeed, the matter seems not one of compensation, but of mere security for indebtedness, for Leland assigned the policies "to be held as additional security for his indebtedness"; or the matter may be viewed as one merely of investment; for the petitioner purchased the policies on foreclosure, charging off the debt as bad, above the amount of the purchase price bid. Moreover, the compensation must, under the statute, be received for personal injuries or sickness. I can not conceive of this corporate petitioner suffering either personal injury, within the intendment of this statute, or any sickness at all. A corporation can not suffer sickness; and the doctrine of *ejusdem*

*generis* is, in my view, clearly applicable here, to indicate that only personal injuries of the same general nature as sickness are intended. In my opinion, Congress clearly, by the addition of the clause as to compensation for personal injuries or sickness, intended to prevent mere receipt of money through accident or health insurance, or under workmen's compensation acts, from being excluded from gross income of anyone receiving it, and equally clearly intended personal injury or sickness to mean bodily or mental injury to the person insured or covered by workmen's compensation acts, and did not extend the benefit of exclusion to any assignee or mere holder of insurable interest.

MURDOCK and OPPER, *JJ.*, agree with this concurring opinion.