RUGBY PRODUCTIONS LTD., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11645–91.          Filed June 14, 1993.

*Alan G. Kirios* and *David J. Gullen,* for petitioner.
*Marilyn Devin,* for respondent.

---

OPINION

Nims, *Judge:* Respondent determined a deficiency in and additions to petitioner's Federal income tax liability for petitioner's tax year ended July 31, 1987, as follows:

*Additions to tax*

| *Deficiency* | *Sec. 6651* | *Sec. 6653(a)* | *Sec. 6661* |
|---|---|---|---|
| $182,872 | $45,090 | $9,147.05 | $45,718 |

Respondent's notice of deficiency, dated March 15, 1991, contains the following notation:

*For returns required to be filed after December 31, 1981 and on or before December 31, 1986, if the * * * [addition to tax] under Section 6653(a) applies, the * * * [addition to tax] under Section 6653(a)(2) will also apply in an amount equal to 50% of the interest payable with respect to the portion of such underpayment which is attributable to negligence. For returns required to be filed after December 31, 1986 and on or before December 31, 1988, if the * * * [addition to tax] under Section 6653(a)(1)(A) applies, the * * * [addition to tax] under Section 6653(a)(1)(B) will also apply in an amount equal to 50% of the interest payable with respect to the portion of such underpayment which is attributable to negligence.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the taxable year in issue.

After concessions, the issues remaining for decision are whether petitioner may deduct the premiums paid on a high-limit monthly disability income insurance policy insuring a stockholder who, with her now deceased husband, owned all of petitioner's stock, and who was also petitioner's key employee; and whether petitioner is liable for the additions to tax for negligence and substantial understatement of income tax as these additions to tax relate to the substantive issue.

This case was submitted fully stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference.

Petitioner is a Delaware corporation. When the petition was filed petitioner's principal place of business was located in Los Angeles, California.

Petitioner is a personal service corporation. During the taxable year in question all of petitioner's stock was owned

by Joan Rosenberg and her now deceased husband, Edgar Rosenberg, as community property.

Petitioner's principal source of income was from the personal services of its key employee, Joan Rosenberg, a professional entertainer.

On July 29, 1986, petitioner applied to Lloyd's of London for a policy which would pay $75,000 per month for 60 months in case of temporary total disability of the insured for accident or sickness, with premiums to be paid annually for 3 years. The proposed "assured" was petitioner, and the proposed "insured person" was Joan Rivers Rosenberg. Petitioner was also named beneficiary. Lloyd's of London thereafter issued its high-limit monthly disability income insurance policy effective for 3 years commencing August 8, 1986, payable as above described. The first premium was $62,427.75 and was paid by petitioner on August 8, 1986. It is unclear when the second annual premium was paid, but since the IRS disallowed a disability expense deduction in the amount of $115,492, it is apparent that two annual premiums were deducted within the fiscal year before the Court.

On August 5, 1986, petitioner's board of directors adopted the following preambles and resolutions:

WHEREAS, it is the consensus of this meeting that the establishment of an employee accident and sickness plan which provides the employee with wage continuation benefits during periods of absence from work due to personal injuries or sickness will advance the best interest of the corporation through the improvement of its relationship with its employees, and

WHEREAS, it is desirable to make such an accident and sickness plan available to specified individual employees for reason of the valuable services performed by said employees.

NOW THEREFORE, be it

RESOLVED that the Secretary of this corporation is authroized [sic] and directed to take such steps as may be necessary to establish an insured accident and sickness plan, as authorized under the provisions of Section 105(b)(d) [sic] and Section 106 of the Internal Revenue Code of 1954, for the benefit of the aforementioned employees; and be it further

RESOLVED that in order to put the plan into effect, the Treasurer be and hereby is authorized to pay insurance premiums due on any accident or sickness policy or policies issued by Lloyds [sic] of London #893/D24966 to a covered employee to provide the benefits of or pursuant to the said plan.

It was the intention of petitioner's officers, accountants, and insurance agents to pay over any proceeds received

under the policy to Mrs. Rosenberg and for petitioner not to retain any portion of the proceeds. These facts were known to Mrs. Rosenberg.

The $115,492 in premiums paid by petitioner during the year in question was not included in the employee compensation paid to Mrs. Rosenberg, or reported as income on her individual tax return.

No benefits were paid under the policy, which has since expired.

In a nutshell, petitioner argues that it created an insured accident and sickness plan providing benefits to its employee, Mrs. Rosenberg. Under this plan, says petitioner, any insurance benefits received by Mrs. Rosenberg as employee, attributable to contributions by petitioner as employer, would be includable in Mrs. Rosenberg's gross income under section 105(a). By the same token, premiums paid by petitioner would not be includable in the gross income of Mrs. Rosenberg, as employee, by virtue of section 106(a).

Respondent argues that the deductibility of insurance premiums as a business expense depends upon the purpose of the policy and that the premiums in this case are not deductible. However, expenditures are not allowed as deductions when paid or incurred to recover tax-exempt income by virtue of section 265(a)(1). Since petitioner rather than Mrs. Rosenberg is by its terms the beneficiary of the policy in question, any proceeds would be tax-exempt income under section 104(a)(3). Respondent also argues that the totality of petitioner's actions with regard to the policy did not constitute a "plan" within sections 105 and 106. Thirdly, respondent argues that the insurance program did not constitute part of a compensation package, which is essential for deductibility of premiums by an employer. The corollary of this argument is that the purpose of petitioner's plan was to pay benefits to Mrs. Rosenberg in her capacity as a controlling shareholder, not as an employee.

Sections 104, 105, and 106 are interrelated. For 1986 and 1987, the relevant parts of these sections provided:

## SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.

(a) IN GENERAL.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

\* \* \* \* \* \* \*

(3) amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer);

## SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS.

(a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS.—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

## SEC. 106. CONTRIBUTIONS BY EMPLOYER TO ACCIDENT AND HEALTH PLANS.

(a) IN GENERAL.—Gross income of an employee does not include employer-provided coverage under an accident or health plan.

Thus, section 104(a)(3) does not require the inclusion of accident and health insurance benefits in gross income, unless (A) they are attributable to employer contributions not includable in an employee's gross income, or (B) they are paid (directly) by the employer.

Section 105(a) provides, for purposes of this case, that an employee's gross income includes accident and health insurance proceeds which are attributable to those employer contributions which were not includable in the employee's gross income, or which were paid by the employer.

Section 106 provides that an employee's gross income does not include employer-provided coverage (e.g., accident and health insurance premiums) under an accident and health plan.

For taxable years ending after December 31, 1986, section 265(a)(1) provides:

## SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) EXPENSES.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle.

Thus, under section 265(a)(1), no deduction is allowed for any expenditure allocable to tax-exempt income other than interest.

Petitioner argues that the $115,492 in premiums which it paid during the taxable year was deductible under section 162(a) and was excludable from Mrs. Rosenberg's gross income under section 105(a), but that any proceeds of the Lloyd's policy which might have been received would have represented gross income to Mrs. Rosenberg.

Petitioner quotes section 162(a)(1), which provides:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

Petitioner appears to be arguing that the insurance premiums for which it seeks a section 162 deduction would in turn be taxable employee compensation to Mrs. Rosenberg but for the provisions of section 106(a), which excludes employer-provided coverage. The putative symmetry in this legislative arrangement is provided, instead, by inclusion of insurance proceeds, if any, in the employee's gross income when eventually received, under section 105(a).

In its brief petitioner states that it compensated its employee, Joan Rosenberg, with a "compensation package consisting of salary and employee benefits," including an accident and sickness plan to provide disability income intended to satisfy the requirements of sections 105 and 106. Petitioner cites the above-quoted preambles and resolutions to support this assertion. Unfortunately for petitioner, the preambles and resolutions do not go that far and are, instead, fraught with ambiguity.

The preambles recite that it is desirable to set up an accident and sickness plan for petitioner's *employees,* and that it is desirable to make the plan available to "specified individual *employees*". Then, the corporate secretary is authorized to set up a plan under sections 105(b) and (d) and 106 "for the benefit of the aforementioned *employees*". Lastly, the corporate treasurer is authorized to pay insurance premiums due on "any accident or sickness policy or policies issued by Lloyds [sic] of London"—and then the number 893/D24966 is inserted—"to a covered employee to provide the benefits of or pursuant to the said plan." The record does not disclose whether petitioner had any employees in addition to Mrs. Rosenberg.

Since the number 893/D24966 indisputably refers to the Lloyd's policy on Joan Rosenberg, but the preambles and resolutions refer to a plan for employees, one is left with the impression that the draftsman was on the horns of a dilemma; i.e., whether to say outright that the company was buying disability insurance for Mrs. Rosenberg, or instead to word the corporate action to be taken in a more generic manner. Petitioner's brief, in what may have been a Freudian slip, does nothing to resolve this quandary. There it is stated:

> These facts indicate that petitioner intended to and did establish a disability income plan providing accident and sickness benefits to [word or words missing] within the meaning of Sections 105 and 106 of the Internal Revenue Code to its employee. Accordingly, petitioner is entitled to deduct the premiums paid as an ordinary and necessary business expense. [Petitioner's brief at 8.]

Whatever the preambles and resolutions were intended to say, they do not add up to a "compensation package", as petitioner insists. In fact, the record is completely silent as to the terms of Mrs. Rosenberg's employment. All we are told is that petitioner's principal source of income is from the personal services of its key employee, Joan Rosenberg. Nor are there in the record any of petitioner's contracts with third parties for Mrs. Rosenberg's services. Petitioner argues that such contracts help to establish the purpose supposedly served by the Lloyd's policy, but in the absence of any of the contracts we are unable to evaluate their significance vis-a-vis the Lloyd's policy.

Petitioner relies heavily upon the rationale of Example (1) of Rev. Rul. 58-90, 1958-1 C.B. 88. This example hypothesizes a corporation which purchases an individual insurance policy for a key employee who is not a stockholder. The policy provides income replacement payments if the employee becomes sick or disabled. The employee has all the rights of ownership in the policy, and none of the benefits are payable to the corporation. The corporation pays the premiums as long as the beneficiary remains an employee. On these assumed facts the IRS ruled that the premiums paid by the corporation should be excluded from the employee's gross income under section 106. The ruling bases this conclusion on the assumption that the corporation was not directly or indirectly the policy beneficiary. According to the ruling, section 162(a) permits a deduction for the premiums paid as an ordinary and necessary business expense if it can be shown (1) that the premiums were paid in consideration of personal services actually rendered by the employee, and (2) that the total amount paid the employee, including the premiums, was not unreasonable compensation for the employee's services. In general, we agree with the conclusions reached regarding Example (1) of the ruling, but not as applied to this case. See further discussion *infra*.

Respondent, on the other hand, argues that we should apply the rationale of a different ruling, Rev. Rul. 66-262, 1966-2 C.B. 105, to the facts before us. In Rev. Rul. 66-262 the IRS ruled that no deduction is allowable for premiums paid for insurance policies covering accidental disability or death of a taxpayer's employees where the taxpayer itself is the beneficiary of the policies. In the ruling, the policies were taken out by a professional baseball club to protect itself against the accidental disability of its players, coaches, and manager.

The theory upon which Rev. Rul. 66-262, *supra*, was based posited that since section 104(a)(3) provides that proceeds of accident or health insurance are not includable in gross income, then section 265 (now section 265(a)(1)) disallows deductions for premiums paid since they are allocable to the production of exempt income.

With regard to section 104(a)(3), we note that we have squarely held, under a predecessor section not materially different in its relevant provisions from section 104(a)(3) (see

section 22(b)(5) of the Revenue Act of 1934, ch. 277, 48 Stat. 680, 687, and of the Revenue Act of 1936, ch. 690, 49 Stat. 1648, 1658), that the exemption of amounts received through accident or health insurance as compensation for personal injuries or sickness is not limited to the insured or to individual taxpayers other than the insured, but includes corporations which have an insurable interest. *Castner Garage, Ltd. v. Commissioner,* 43 B.T.A. 1, 5 (1940); cf. *Peoples Finance & Thrift Co. v. Commissioner,* 12 T.C. 1052, 1055 (1949) (disability policy proceeds exemption under 1939 Code section 22(b)(5) not extended to purchasers for value), affd. 184 F.2d 836 (5th Cir. 1950).

The parties focus the major part of their respective arguments on the question of whether it is petitioner or Mrs. Rosenberg who would be entitled to the policy proceeds as a matter of law. Respondent points to the indisputable fact that in the Lloyd's policy petitioner is named as the "Assured", Mrs. Rosenberg is named as the "Insured Person", and that under the terms of the policy Lloyd's agrees to pay the agreed upon policy benefits to the "Assured" (petitioner) in the event of the injury or sickness of the insured person (Mrs. Rosenberg).

Petitioner's brief argues, in effect, that petitioner was merely a conduit for funneling to Mrs. Rosenberg the policy benefits to which she was legally entitled. Petitioner also points to the undisputed stipulated testimony of petitioner's officers, accountants, and insurance agents that the intended beneficiary of the policy was Mrs. Rosenberg, to whom such intention was known.

Petitioner cites *Bass v. John Hancock Mut. Life Ins. Co.,* 518 P.2d 1147 (Cal. 1974), in support of the proposition that an employee who otherwise satisfies the conditions of a group disability plan may maintain an action against the insurer as a third-party beneficiary. See *id.* at 1150 n.4. But this begs the question of whether Mrs. Rosenberg may be regarded as the beneficiary in the face of the express terms of the Lloyd's policy naming petitioner, not Mrs. Rosenberg, as beneficiary. Furthermore, contrary to the statement made in petitioner's brief, in the corporate resolution authorizing the procurement of the Lloyd's policy it is *not* "expressly stated that all policy benefits would be paid to Mrs. Rosenberg."

Citing a treatise, petitioner argues that it is black-letter law in California that several instruments, papers, and contracts, whether they expressly refer to each other or it appears from extrinsic evidence that they were executed as part of one transaction, are to be construed as a single contract if they relate to the same matter. Petitioner then asserts that the corporate resolutions "should be taken as part of Mrs. Rosenberg's employment contract" under which she would be entitled to receive any insurance proceeds as a matter of law.

The problem with petitioner's single contract argument is that we are being asked to play this particular game without a full deck. If the corporate resolutions are indeed part of Mrs. Rosenberg's employment contract, then everything going to make up the contract must be examined, which is not possible on this record. Petitioner's brief notes that petitioner is a personal services corporation (as we have found), the principal income of which is realized by providing the personal services of its key employee, Mrs. Rosenberg, to third parties. But petitioner could not have contracted these services to third parties without itself having a contractual right to those services for which Mrs. Rosenberg would, of course, have to be compensated as an employee. Only by examining such a contract, whether it be written or oral, or a combination of instruments, papers and contracts, could we determine the status of the Lloyd's policy as part of Mrs. Rosenberg's employment package.

We think there is substantial merit in respondent's section 104(a)(3)-265(a)(1) argument, since the proceeds of the Lloyd's policy, by its terms, would have been payable to petitioner, and petitioner has not established Mrs. Rosenberg's legal right to such proceeds. While petitioner's officers, etc., may have intended to have petitioner pay over the proceeds to Mrs. Rosenberg, nothing would have prevented the application of these proceeds for the monetary liquidation of third-party claims against petitioner for Mrs. Rosenberg's failure to perform in the event of her accident or sickness. The obligation to furnish Mrs. Rosenberg's services to third parties would have been petitioner's, not Mrs. Rosenberg's, and the disability policy proceeds would have been the logical source of funds with which to liquidate damages accruing from petitioner's and Mrs. Rosenberg's failure to perform.

Thus, since petitioner was entitled to any proceeds of the Lloyd's monthly disability insurance policy on Mrs. Rosenberg, the insured, such proceeds would have constituted exempt income to petitioner under section 104(a)(3), and since the premiums paid by petitioner are allocable to such income they are nondeductible under section 265(a)(1). Since we hold for respondent on this ground, we deem it unnecessary to address alternative arguments supporting respondent's substantive determination.

In the deficiency notice respondent also determined that petitioner is liable for the addition to tax for negligence under section 6653. After reviewing the record we find no basis for imposing the section 6653 addition.

The parties agree that the application of section 6661 remains in issue and will be determined by the final amount of the deficiency.

To reflect the foregoing,

*Decision will be entered under Rule 155.*