T.C. Memo. 2003-325

UNITED STATES TAX COURT

RICKY SCHMIDT AND SUZETTA J. SCHMIDT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

HILLSIDE DAIRY, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 5267-01, 5268-01.     Filed November 25, 2003.

Douglas Bleeker, for petitioners.

Douglas Polsky and Charles Berlau, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  These cases have been consolidated for
trial, briefing, and opinion.  In separate notices of deficiency,
respondent determined deficiencies in petitioners' Federal income

tax and accuracy-related penalties under section 6662[1] for 1995, 1996, and 1997 as follows:

Ricky & Suzetta Schmidt, Docket No. 5267-01:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1995 | $4,550 | -- |
| 1996 | 3,715 | -- |
| 1997 | 2,827 | -- |

Hillside Dairy, Inc., Docket No. 5268-01:

| Year Ended | Deficiency | Penalty Sec. 6662(a) |
|------------|-----------|----------------------|
| 11/30/95 | $2,179 | $435.80 |
| 11/30/96 | 2,698 | 539.60 |
| 11/30/97 | 1,846 | 369.20 |

The issues for decision are:

(1) Whether amounts paid by Hillside Dairy, Inc. (Hillside Dairy or the corporation), to provide medical care, food, and lodging to its shareholders, Ricky Schmidt (Mr. Schmidt) and Suzetta J. Schmidt (Mrs. Schmidt) (collectively the Schmidts), and their children are (a) constructive dividends, as respondent maintains, or (b) employee medical care expenses and/or reimbursed employee expenses that are excluded from the Schmidts' gross income and deductible by Hillside Dairy as ordinary and necessary business expenses, as petitioners maintain; and

---

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(2) whether Hillside Dairy is liable for the accuracy-related penalty under section 6662(a) for the taxable years ended November 30, 1995, 1996, and 1997.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

When the petitions were filed in these cases, the residence of the Schmidts, as well as the principal place of business of Hillside Dairy, was in Parker, South Dakota.

A. The Schmidts

The Schmidts are husband and wife; they have two children. In March 1981, the Schmidts entered into a contract for deed to acquire 20 acres (the homestead).[2] The homestead includes a house (the farmhouse), where the Schmidts have resided since 1981. Between February 1985 and January 1986, the Schmidts acquired 140 additional acres adjoining the homestead. The homestead and the 140 acres are referred to collectively as the Schmidt farm. The Schmidt farm consists of pasture, farmland, and cow lots. A dairy barn, machine sheds, grain bins, and feed grain bulk bins, as well as the farmhouse, are located on the Schmidt farm.

---

[2]The homestead was Mr. Schmidt's childhood home where he lived with his parents until he married Mrs. Schmidt in 1974.

The Schmidts raise corn and operate a dairy on the Schmidt farm. In the dairy operation, cows are milked twice daily. In addition, the cows are bred once a year (usually in the winter). When the cows are calving (especially with first-time calving heifers), they must be checked at least every 4 hours, usually on a 24-hour basis.

In addition to the Schmidt farm, Mr. Schmidt individually owns 80 additional acres which he acquired in 1987. The 80 acres are farmed by Mr. Schmidt as a sole proprietor.

B. Hillside Dairy

On January 7, 1993, Hillside Dairy was incorporated under the laws of the State of South Dakota.[3] Hillside Dairy was organized primarily to raise grain and operate a dairy.

The Schmidts have been the sole shareholders, officers, and directors of Hillside Dairy since its incorporation. Mr. Schmidt has been president, treasurer, and a director, and Mrs. Schmidt has been vice president, secretary, and a director, of Hillside Dairy.

Article IV, section 10, of the bylaws of Hillside Dairy provides:

> SECTION 10. Repayment of Disallowed Expenses. Any expense paid by the Corporation which is finally determined as a personal expense of any officer or employee and disallowed as Corporation expense shall be

[3]Douglas Bleeker, counsel for petitioners, prepared the articles of incorporation, bylaws, minutes of meetings, and other corporate documents for Hillside Dairy.

repaid by the officer or employee to the Corporation within Twenty-four (24) months of the final determination by the Internal Revenue Service with interest at Three (3%) below the New York Prime Rate on the date of final determination.

A similar repayment obligation was set forth in a resolution adopted by the board of directors of Hillside Dairy at the directors' first meeting, held on January 10, 1993. At that meeting, the directors also adopted the following resolution:

RESOLVED that the corporation [sic] officers and employees shall be required to live at the worksite of the corporation to ensure security for the corporation property and operations. The officers and employees shall be required to live on the worksite to supervise the care and feeding of the livestock of the corporation. The corporation shall supply said officers and employees all of their food and lodging while living at said worksite. That all officers and employees shall be considered on duty when at the worksite and therefore entitled to such benefits.

In addition, at their first meeting, the directors adopted a medical reimbursement plan covering all "employees and officers executing management responsibilities" and their spouses and dependents. The medical reimbursement plan provides for the payment of all medical expenses "deductible on Form 1040", including expenses for drugs, doctor, hospital, and eyeglasses, to the extent not compensated by insurance or otherwise. Under the plan, each participant is entitled to a maximum reimbursement of $10,000 per year. Hillside Dairy also paid the premiums on a health insurance policy covering the Schmidts and their children.

On January 25, 1993, the Schmidts conveyed to Hillside Dairy their interest in the Schmidt farm, including the farmhouse.[4] Hillside Dairy raises corn and maintains between 30 and 35 milking cows (half owned by the corporation and the other half by Mr. Schmidt individually).

On August 9, 1994, Mr. Schmidt acquired a one-fourth interest as a tenant in common in 166 acres located approximately 1 mile from the Schmidt farm. On November 30, 1994, Mr. Schmidt conveyed his interest in the 166 acres to Hillside Dairy by warranty deed. On the same date, the other three tenants in common transferred their interests in the property to Hillside Dairy.

C. Farm Lease

Hillside Dairy leased the Schmidt farm and the 166 acres to Mr. Schmidt under a written agreement titled "Farm Lease", dated December 1, 1995. The initial term of the lease was 1 year (to November 30, 1996); the lease continued on a year-to-year basis until otherwise canceled. During the years at issue, Hillside Dairy leased a pasture to a neighbor of Mr. Schmidt.

Mr. Schmidt agreed to pay $6,000 rent to Hillside Dairy for the use of "the building site and improvements". In addition,

---

[4]The Schmidts held their interest in the homestead under a contract for deed until January 1998. In January 1998, the Schmidts acquired title to the homestead. In April 1998, the Schmidts conveyed title of the homestead to Hillside Dairy.

Hillside Dairy was to receive all of the gross proceeds from the sales of crops grown on the farm, as well as all payments received under Federal conservation programs (or any other Federal, State, or local governmental programs). Hillside Dairy supplied all of the fertilizer, chemicals, and seed necessary to plant and treat the crops.[5]

Mr. Schmidt agreed (1) to farm the land; (2) to protect the crops from injury and waste; (3) to till the land after harvesting the crops; and (4) to rotate the crops from year to year. Hillside Dairy agreed to furnish all tools, farm implements, machinery, and hired help necessary to cultivate and manage the farm. Hillside Dairy agreed to furnish all necessary materials, and the Schmidts agreed to supply all necessary labor, to maintain all fences and other improvements.

Mr. Schmidt was permitted to use the corporation's combine and tractor on the land he owned individually. He also had use of one of the pastures.

D.   Mr. Schmidt's Separate Farming Activity

During the years at issue, Mr. Schmidt individually (and not as an employee of Hillside Dairy) farmed land that was not owned by Hillside Dairy. He kept his personal grain separate from that

---

[5]Although a contradictory provision required Mr. Schmidt to "provide all seed, labor, and other expenses of producing, harvesting, and marketing crops", Hillside Dairy in fact paid all those expenses and deducted the costs in computing its income.

of the corporation.  In addition, Mr. Schmidt had a dairy operation separate from that of the corporation.  Mr. Schmidt also did custom hire work for his brother on land approximately 4-1/2 miles from the Schmidt farm.

E.    Compensation and Payment of Food, Lodging, and Medical Expenses

Mr. Schmidt was the sole employee of Hillside Dairy. Hillside Dairy paid Mr. Schmidt, as an officer/employee, $750 in 1995 and $200 in 1996 and 1997.

Following the transfer of the Schmidt farm to Hillside Dairy, the Schmidts continued to use the farmhouse as their residence.  Hillside Dairy paid for (1) the food consumed by the Schmidts and their children, (2) the utilities, property tax, and insurance for the farmhouse, and (3) the cost of some of the meals consumed by the Schmidts and their children away from the farmhouse (dining-out expenses).  In addition, Hillside Dairy paid all the medical care expenses of the Schmidts and their children.

Hillside Dairy did not pay dividends for fiscal years ended November 30, 1995, 1996, and 1997.

F.    Income Tax Returns

Mr. Schmidt was responsible for keeping the books and paying bills for Hillside Dairy.  Mr. Bleeker (petitioners' counsel)

prepared the Schmidts' joint Forms 1040, U.S. Individual Income Tax Return, and Hillside Dairy's Forms 1120, U.S. Corporation Income Tax Return, for the years at issue.

    1.   <u>Hillside Dairy</u>

Hillside Dairy filed timely its Forms 1120 for the taxable years ended November 30, 1995, 1996, and 1997.  On these returns, Hillside Dairy reported total income and total deductions as follows:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Total income | $54,988 | $68,465 | $57,679 |
| Total deductions | 54,987 | 68,465 | 63,215 |
| Taxable income/loss | 1 | -0- | (5,536) |

Included in the total expenses deducted by Hillside Dairy were the following items for food, lodging, and medical expenses provided to the Schmidts (amounts are rounded to the nearest dollar):

|                        | 11/30/95 | 11/30/96 | 11/30/97 |
|------------------------|----------|----------|----------|
| Food & lodging         |          |          |          |
| Property tax--house    | $523     | $400     | $388     |
| Insurance--house       | --       | 120      | 132      |
| Food for employees     | 6,724    | 8,760    | 8,161    |
| Utilities--house       | 2,567    | 2,439    | 2,557    |
| Depreciation--house    | 1,667    | 1,667    | 1,667    |
| Meals & entertainment[1] | 994    | 1,338    | 1,369    |
| Food & lodging expenses | 12,475  | 14,724   | 14,274   |
| Medical                |          |          |          |
| Medical insurance      | $2,052   | $2,286   | $1,586   |
| Medical expenses       | --       | 978      | 1,985    |
| Medical costs          | 2,052    | 3,264    | 3,571    |

[1]The meals and entertainment expenses claimed by Hillside Dairy included a portion of the Schmidt family's dining-out expenses.

2.   The Schmidts

The Schmidts timely filed their joint income tax returns for 1995, 1996, and 1997. On these returns, the Schmidts reported Mr. Schmidt's wages from Hillside Dairy. They did not report any income attributable to their food, lodging-related, and medical expenses paid by Hillside Dairy. They reported Mr. Schmidt's income from his separate farming activities as self-employment income. Mr. Schmidt reported gross income, total expenses, and net profit from his separate farming activities on Schedule F, Profit or Loss from Farming, for 1995, 1996, and 1997 as follows:

|                | 1995     | 1996     | 1997     |
|----------------|----------|----------|----------|
| Gross income   | $80,928  | $50,634  | $75,333  |
| Total expenses | 73,110   | 47,791   | 75,261   |
| Net profit     | 7,818    | 2,843    | 72       |

G.    Notices of Deficiency

On January 25, 2001, respondent timely mailed to the Schmidts a statutory notice of deficiency for 1995, 1996, and 1997 (the Schmidt notice of deficiency).  Also on January 25, 2001, respondent timely mailed to Hillside Dairy a statutory notice of deficiency for its fiscal years ended November 30, 1995, 1996, and 1997 (the Hillside Dairy notice of deficiency).

In the Hillside Dairy notice of deficiency, respondent disallowed the food, lodging, and medical expenses deducted by Hillside Dairy, totaling $14,527 for 1995, $17,988 for 1996, and $17,845 for 1997.  Respondent determined that (1) Hillside Dairy failed to establish that the food and lodging expenses were ordinary and necessary business expenses under section 162 and (2) those items were the Schmidts' personal expenses. Respondent further determined that Hillside Dairy was liable for the accuracy-related penalty under section 6662(a).

In the Schmidt notice of deficiency, respondent determined that payments by Hillside Dairy of the Schmidts' food, lodging, and medical expenses resulted in constructive dividends as follows:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Food & lodging[1] | $13,470 | $15,722 | $15,272 |
| Medical | 2,052 | 3,264 | 3,571 |
| Total dividends | 15,522 | 18,986 | 18,843 |

[1]The record does not explain why the amounts of dividends for food and lodging expenses included in the Schmidts' income exceed the amounts disallowed as deductions to Hillside Dairy.

OPINION

Issue 1. <u>Expenses Incurred by Hillside Dairy To Provide Medical Benefits, Food, and Housing to the Schmidts in 1995, 1996, and 1997</u>

A. <u>Positions of the Parties</u>[6]

Respondent disallowed deductions taken by Hillside Dairy for medical costs (health insurance premiums and other medical care expenses), food, lodging (including property insurance, property taxes, and utilities for the farmhouse), and depreciation of the farmhouse. Respondent asserts that the medical costs, food, and lodging expenses are the Schmidts' personal, family, and living

_____

[6]Under certain circumstances, sec. 7491 places the burden of proof or production on the Commissioner. Sec. 7491 applies to court proceedings arising in connection with tax examinations beginning after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726. Petitioners timely filed their returns for the years at issue. Hence, all of the returns were filed on or before Apr. 15, 1998. The record does not disclose when the examination of petitioners' tax returns began, and it is possible that the examination began before July 23, 1998. Petitioners do not contend that sec. 7491 applies in these cases, and they have not otherwise asserted that respondent has the burden of proof or production with respect to any issue presented in these cases. We therefore conclude that sec. 7491 does not apply, and petitioners have the burden of proof and production.

expenses and that payments of these expenses by Hillside Dairy constitute constructive dividends to the Schmidts. On the other hand, petitioners assert that all the expenditures are reasonable and necessary business expenses, deductible by Hillside Dairy and excluded from the Schmidts' income.

Petitioners contend that the medical costs are employee benefits, deductible by the employer and excludable from the employee's income under sections 105 and/or 106. Petitioners further maintain that Hillside Dairy provided food and lodging to Mr. Schmidt in his capacity as an employee and that such was done for the convenience of Hillside Dairy. Consequently, petitioners assert that the food and lodging expenses are employer-provided "meals and lodging", the costs for which are excluded from the Schmidts' income under section 119 and deductible by Hillside Dairy. Petitioners further assert that, as owner and lessor of the farmhouse, Hillside Dairy is entitled to deduct (1) the expenditure for insurance on the farmhouse as a reasonable and necessary business expense under section 162, (2) the property taxes under either section 162 or 164, and (3) the depreciation of the farmhouse under section 167. Petitioners posit that these latter expenses are not the Schmidts' personal expenses because they are not the owners of the property.

B.   Medical Expenses

We first shall decide whether the payments by Hillside Dairy of the medical expenses are excludable from the Schmidts' gross income under sections 105 and 106 and deductible by the corporation as ordinary and necessary business expenses under section 162(a).

Under section 106, "an employee's gross income does not include employer-provided coverage (e.g., accident and health insurance premiums) under an accident and health plan." Rugby Prods. Ltd. v. Commissioner, 100 T.C. 531, 535 (1993). The employer may provide coverage under an accident or health plan by paying the premium (or a portion of the premium) on an accident or health insurance policy covering one or more employees or by contributing to a separate trust or fund. Sec. 1.106-1, Income Tax Regs.

Under the general rule of section 105(a), amounts received by an employee through accident and health insurance for personal injury or sickness, to the extent attributable to nontaxed employer contributions, are includable in the employee's gross income. Amounts received under an accident or health plan for employees are treated as amounts received through accident or health insurance. Sec. 105(e). An exception to the general rule allows an employee to exclude from gross income amounts received to reimburse the employee for expenses incurred by the employee

for the medical care (as defined in section 213(d)[7]) of the employee and the employee's spouse and dependents.  Sec. 105(b).

For the reasons set forth below, we agree with petitioners that pursuant to sections 105 and/or 106 payments by Hillside Dairy for medical expense reimbursements and health insurance premiums need not be included in the Schmidts' gross income for 1995, 1996, and 1997.

Section 105(e) requires first, that the benefits be received under a "plan", and second, that the plan be "for employees", rather than for some other class of persons such as shareholders and their relatives.  Larkin v. Commissioner, 48 T.C. 629, 635 (1967), affd. 394 F.2d 494 (1st Cir. 1968).  After giving due consideration to the record before us, we conclude that Hillside Dairy's medical plan (payment of health insurance premiums and medical expense reimbursements) satisfies both the "plan" and "for employees" requirements of section 105(e).

Section 1.105-5(a), Income Tax Regs., provides guidelines as to what constitutes an accident or health plan.  A plan may cover one or more employees, and different plans may be established for different employees or classes of employees.  Id.  The regulations do not require that there be a written plan or that there be enforceable employee rights under the plan, so long as

_____

[7]Sec. 213(d)(1)(D) includes amounts paid for medical insurance in the definition of medical care.

the participant has notice or knowledge of the plan.  <u>Wigutow v. Commissioner</u>, T.C. Memo. 1983-620.

In the instant case, a plan (as defined in section 1.105-5(a), Income Tax Regs.) existed.  Hillside Dairy adopted a written medical reimbursement plan identifying who was eligible to participate, what expenses would be reimbursed, and how participants were to make claims for reimbursement.  The plan was adopted at the first meeting of the board of directors.

Mr. Schmidt had knowledge of the medical reimbursement plan as well as the health insurance policy.  Moreover, there is no doubt that the medical reimbursements provided under the written plan were intended to complement benefits provided by health insurance.  Thus, the corporation's medical plan included health insurance as well as the medical reimbursements.  And finally, we are satisfied that the corporation's medical plan was for Mr. Schmidt as an employee of Hillside Dairy, and not for his benefit as one of the corporation's shareholders.

Plans limited to employees who are also shareholders are not per se disqualified under section 105(b).  <u>Larkin v. Commissioner</u>, <u>supra</u> at 635 n.5.  In this regard, we have sustained plans for corporate officers who were also shareholders because those officers had central management roles in conducting the business of the corporation.  <u>Wigutow v. Commissioner</u>, <u>supra</u>; <u>Epstein v. Commissioner</u>, T.C. Memo. 1972-53; <u>Seidel v.</u>

Commissioner, T.C. Memo. 1971-238; Smith v. Commissioner, T.C. Memo. 1970-243; Bogene, Inc. v. Commissioner, T.C. Memo. 1968-147.

Respondent has stipulated that during the years at issue Mr. Schmidt was an employee of Hillside Dairy. Indeed, Mr. Schmidt was the corporation's only employee. And without Mr. Schmidt's involvement, Hillside Dairy could not have raised its crops or conducted its dairy operations.

Mr. Schmidt's compensation for services rendered to Hillside Dairy was his salary and employee benefits. Respondent does not contend that Mr. Schmidt received excessive compensation. Indeed, respondent contends that Mr. Schmidt was undercompensated for his services

Although Mrs. Schmidt did not work for Hillside Dairy, payment of her medical expenses was based on her status as Mr. Schmidt's spouse. Likewise, payment of the medical expenses for the Schmidts' children was based on their status as Mr. Schmidt's dependents. The derivative participation of Mr. Schmidt's spouse and dependents is plainly contemplated both by the medical plan and by section 105(b).

On the basis of the record before us, we conclude that medical payments for the benefit of the Schmidts and their children were made under a plan for employees and not for shareholders. Accordingly, during the years at issue, the

medical payments made by Hillside Dairy pursuant to its medical plan (including the insurance premiums and other medical care expenditures) are excludable from the Schmidts' gross income under section 105(b).

Section 162(a) permits a taxpayer to deduct all ordinary and necessary expenses incurred during the taxable year in carrying on the taxpayer's trade or business.  An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved."  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.  See Commissioner v. Heininger, 320 U.S. 467, 471 (1943).

When payments for medical care are properly excludable from an employee's income because they are made under a "plan for employees," they are deductible by the employer as ordinary and necessary business expenses under section 162(a).  Sec. 1.162-10(a), Income Tax Regs.  Consequently, Hillside Dairy is entitled to deduct the insurance premiums and medical reimbursement payments under section 162(a).

C.  Food, Utilities, Property Insurance, Property Taxes, and Depreciation

1.  Section 119:  Employer-Provided Meals and Lodging

We next decide whether the food (food for employees and meals and entertainment) and lodging-related expenses (utilities,

property insurance, property taxes, and depreciation related to the farmhouse) qualify as employer-provided meals and lodging expenses, excludable from the Schmidts' income under section 119 and deductible by Hillside Dairy under section 162.

Meals and lodging furnished to an employee by his employer are excluded from the employee's gross income under section 119 if the meals and lodging are provided for the convenience of the employer on the premises of the employer. In the case of lodging, the employee must be required to accept the lodging on the business premises of his employer as a condition of employment.

Meals and lodging are furnished for the "convenience of the employer" if there is a direct nexus between the meals and lodging furnished and the asserted business interests of the employer served thereby. McDonald v. Commissioner, 66 T.C. 223, 230 (1976). Petitioners assert that Mr. Schmidt, as the corporation's sole employee, was required to be available for duty 24 hours a day.

Hillside Dairy leased the Schmidt farm to Mr. Schmidt. Hillside Dairy contracted with Mr. Schmidt as a tenant, not as its employee, to perform all necessary work.

It is well settled that "Ordinarily, taxpayers are bound by the form of the transaction they have chosen; taxpayers may not in hindsight recast the transaction as one that they might have

made in order to obtain tax advantages." <u>Framatome Connectors USA Inc. v. Commissioner</u>, 118 T.C. 32, 70 (2002) (citing <u>Estate of Leavitt v. Commissioner</u>, 875 F.2d 420, 423 (4th Cir. 1989), affg. 90 T.C. 206 (1988), and <u>Grojean v. Commissioner</u>, 248 F.3d 572, 576 (7th Cir. 2001), affg. T.C. Memo. 1999-425). Here, inasmuch as Mr. Schmidt farmed the Schmidt farm as a tenant, and not as an employee of Hillside Dairy, the food and lodging in question were not furnished to Mr. Schmidt as a corporate employee for the convenience of his employer. Thus, the food and lodging expenses at issue are not section 119(a) meals and lodging expenses.

2. <u>Deductibility of Expenses Related to the Leasing of the Schmidt Farm</u>

During the years at issue, Hillside Dairy's business activities included leasing the Schmidt farm. It leased the farm, including the farmhouse, to the Schmidts and received rent. Therefore, we look to the terms of the farm lease to determine whether expenses for insurance, utilities, depreciation, and taxes are the expenses of Hillside Dairy or the Schmidts.

a. <u>Property Insurance</u>

Hillside Dairy deducted $120 in 1996 and $132 in 1997 for property insurance. "Certain business-related insurance expenses unquestionably are deductible under section 162(a)." <u>Metrocorp, Inc. v. Commissioner</u>, 116 T.C. 211, 245 (2001) (citing section 1.162-1(a), Income Tax Regs.). The farm lease does not require

the Schmidts to provide property insurance covering the farmhouse or other improvements on the property. The property insurance is an ordinary and necessary business expense of Hillside Dairy (the owner of the property) and not a personal, family, or living expense of the Schmidts. We hold, therefore, Hillside Dairy is entitled to deduct the insurance expenses as claimed in 1996 and 1997.

b.    Utilities

Hillside Dairy deducted utilities expenses of $2,567 in 1995, $2,439 in 1996, and $2,557 in 1997. Utilities expenses may be deductible under section 162(a) if the expenses incurred are ordinary and necessary in carrying on a trade or business. Vanicek v. Commissioner, 85 T.C. 731, 742 (1985); Sengpiehl v. Commissioner, T.C. Memo. 1998-23; Green v. Commissioner, T.C. Memo. 1989-599.

Here, the farm lease did not contain any provisions regarding the utilities for the farmhouse. Petitioners did not produce any utility bills, canceled checks, or testimony to identify that portion, if any, of the utilities expenses related to the corporation's business. We have no basis for making any allocation of the expenses. Thus, petitioners have failed to establish that Hillside Dairy is entitled to any deduction for utilities expenses.

c.    Depreciation

Hillside Dairy deducted $1,667 in 1995, 1996, and 1997 for depreciation of the farmhouse.  Section 167(a) allows a depreciation deduction from gross income for property used in the taxpayer's trade or business or held for the production of income.  Ordinarily, depreciation or amortization is available to an owner of an asset with respect to the owner's basis in the asset.  Hillside Dairy owned the Schmidt farm, including the farmhouse.  One of the business activities of Hillside Dairy was the leasing of the Schmidt farm, including the farmhouse.  Thus, the farmhouse is property used in the corporation's trade or business.

We hold that Hillside Dairy is entitled to a deduction for depreciation of the farmhouse for each of the years at issue as claimed.

d.    Taxes

Hillside Dairy deducted property taxes of $523 in 1995, $400 in 1996, and $388 in 1997 attributable to the farmhouse. Hillside Dairy owned the Schmidt farm.  Section 164(a)(1) allows the owner of property a deduction for real property taxes.  We hold, therefore, that Hillside Dairy may deduct property taxes as claimed in the years at issue.

e.    Summary of Food and Lodging Expenses

To summarize, Hillside Dairy may deduct the following
expenses for the years at issue:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Property tax--house | $523 | $400 | $388 |
| Property insurance--house | -- | 120 | 132 |
| Depreciation--house | 1,667 | 1,667 | 1,667 |
| Total | 2,190 | 2,187 | 2,187 |

Hillside Dairy may not deduct the following food and lodging
expenses:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Food for employees | $6,724 | $8,760 | $8,161 |
| Meals & entertainment | 994 | 1,338 | 1,369 |
| Utilities--house | 2,567 | 2,439 | 2,557 |
| Total | 10,285 | 12,537 | 12,087 |

3.    Inclusion of Payments in the Schmidts' Gross Income

When a corporation makes an expenditure that primarily
benefits the corporation's shareholders, the amount of the
expenditure may be taxed to the shareholders as a constructive
dividend.  Hood v. Commissioner, 115 T.C. 172 (2000); Magnon v.
Commissioner, 73 T.C. 980, 993-994 (1980); Am. Insulation Corp.
v. Commissioner, T.C. Memo. 1985-436.  We have found that
expenses for food for employees, meals and entertainment, and
utilities paid by Hillside Dairy are the Schmidts' expenses.
Petitioners contend that the payments are not constructive
dividends because Mr. Schmidt was required to repay any amounts
that Hillside Dairy could not deduct for Federal income tax

purposes.  Petitioners cite Cepeda v. Commissioner, T.C. Memo. 1993-477, to support their position.  Cepeda, however, is inapposite.  In that case, the taxpayers claimed that advances made by the corporation were loans rather than employee compensation or constructive dividends.  Petitioners do not contend that the corporate payments of Mr. Schmidt's expenses were loans.

For Federal income tax purposes, a transaction will be characterized as a loan if there was "an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment."  Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988).  In the instant case, when the payments were made there was no unconditional obligation on the part of Mr. Schmidt to repay a specific dollar amount to the corporation.  His obligation to repay any of the payments was in general terms.  The amount of repayment could not be determined when the payments were made.  Any obligation to repay any amount could not arise before respondent disallowed the deduction for the expenses; i.e, when the Hillside Dairy notice of deficiency was issued in January 2001.  Thus, the payments were not loans.  Since the payments when made by Hillside Dairy did not constitute business expenses of the corporation or loans to the Schmidts, the conclusion is

inescapable that the payments constituted distributions by Hillside Dairy to the Schmidts.

In <u>N. Am. Oil Consol. v. Burnett</u>, 286 U.S. 417, 424 (1932), the Supreme Court stated:

> If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

It is clear, therefore, under the claim of right doctrine, the amounts paid by Hillside Dairy in 1995, 1996, and 1997 were taxable to the Schmidts in those years. See <u>Pahl v. Commissioner</u>, 67 T.C. 286, 289 (1976).

If a taxpayer is required to repay income recognized under the claim of right doctrine in an earlier tax year, section 1341 permits the taxpayer, in effect, to elect to compute his taxes for the year of repayment in a manner that gives the taxpayer the equivalent of a refund (without interest) of tax for the earlier year. Specifically, section 1341(a)(5) permits the tax for the year of repayment to be reduced by the amount of the tax paid for the year of receipt that was attributable to the inclusion of the repaid amount in that year's gross income. <u>United States v. Skelly Oil Co.</u>, 394 U.S. 678, 682 (1969). Section 1341, however, requires actual repayment, restoration, or restitution. <u>Chernin v. United States</u>, 149 F.3d 805, 816 (8th Cir. 1998); <u>Kappel v.</u>

United States, 437 F.2d 1222, 1226 (3d Cir. 1971); Estate of Smith v. Commissioner, 110 T.C. 12 (1998).

Although the bylaws of Hillside Dairy require Mr. Schmidt to repay amounts for which the corporation is disallowed a deduction, Mr. Schmidt does not claim that he has repaid the disallowed amounts.  Indeed, there is no evidence in the record to show that he did.  Therefore, section 1341 does not apply.  We hold that Hillside Dairy's payment of the Schmidts' food, meals and entertainment, and utilities expenses constitutes income to the Schmidts.

Petitioners argue that the expenses are meals and lodging expenses excludable under section 119.  We have found to the contrary.  Thus, the food, meals and entertainment, and utilities expenses are the Schmidts' personal living expenses.

Personal, family, or living expenses are not deductible except as otherwise expressly permitted.  Sec. 262.  A taxpayer's expenses for his or her own meals and lodging are personal because they would have been incurred whether or not the taxpayer had engaged in any business activity.  Christey v. United States, 841 F.2d 809, 814 (8th Cir. 1988); Moss v. Commissioner, 80 T.C. 1073, 1078 (1983), affd. 758 F.2d 211 (7th Cir. 1985).  In order for personal living expenses to qualify as a deductible business expense under 162(a), the taxpayer must demonstrate that the expenses were different from, or in excess of, what he would have

spent for personal purposes. Sutter v. Commissioner, 21 T.C. 170, 173 (1953). Petitioners did not produce any bills, canceled checks, or testimony to substantiate any portion of the expenses that relates to Mr. Schmidt's separate farming business. Thus, petitioners have failed to establish that the Schmidts are entitled to a deduction for any portion of the expenses under section 162.[8]

### 4. Rental Value of Residence

The Schmidts leased the Schmidt farm, including the farmhouse, from Hillside Dairy for $6,000. We are satisfied, on the basis of the property taxes for the farmhouse, that the fair rental value of the farmhouse for each year at issue did not exceed $6,000.

### 5. Summary of Adjustments to the Schmidts' Income

The following personal expenses paid by Hillside Dairy are included in the Schmidts' income as constructive dividends for the years at issue:

---

[8]Except as otherwise provided, an individual is not allowed a deduction with respect to the use of a dwelling unit that is used by the individual as a residence. Sec. 280A(a). The individual, however, may deduct expenses allocable to portions of the dwelling that are exclusively used for business purposes. Sec. 280A(c). In the cases at bar, the Schmidts did not argue that the utility expenses are deductible under sec. 280A. Therefore, we do not address the question of whether any portion of the utility expenses may be deductible under that section. We note, however, that the Schmidts made no showing that the farmhouse, or any portion thereof, was used exclusively for business purposes.

|                       | 11/30/95 | 11/30/96 | 11/30/97 |
|-----------------------|----------|----------|----------|
| Food for employees    | $6,724   | $8,760   | $8,161   |
| Meals & entertainment | 994      | 1,338    | 1,369    |
| Utilities--house      | 2,567    | 2,439    | 2,557    |
| Total                 | 10,285   | 12,537   | 12,087   |

Issue 2.  Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that Hillside Dairy is liable for the accuracy-related penalty under section 6662(a).  As pertinent here, section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to negligence or disregard of rules or regulations.  Sec. 6662(b)(1).  Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

The penalty under section 6662(a) does not apply to any portion of an understatement of tax if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his/her proper tax liability for the year.  Id.  The good faith reliance on the advice of an independent, competent professional

as to the tax treatment of an item may meet this requirement.

Sec. 1.6664-4(b), Income Tax Regs.

Despite the fact that petitioners have the burden of proof, see supra note 6, petitioners have made no showing that they made an attempt to comply with the tax rules and regulations with regard to those deductions taken by Hillside Dairy for the years at issue which have been disallowed. Hence, with respect to those deductions, petitioners have failed to show that Hillside Dairy was not negligent. Nor have petitioners showed that they acted in good faith with respect to, or that there was reasonable cause for, the position they took.

Further, petitioners do not claim that they relied on Mr. Bleeker or any other professional as to the tax treatment of the expenses for food and lodging.[9] Petitioners simply assert that the accuracy-related penalty does not apply because Hillside Dairy properly claimed the deductions under section 162(a) and

[9]Before the trial in these cases, respondent filed a motion to disqualify Mr. Bleeker from his representation of petitioners. Respondent's motion was based, in part, on the premise that, if petitioners contend that they reasonably relied on Mr. Bleeker's advice with respect to the proper tax treatment of the payments at issue, then Mr. Bleeker would be required to testify as a witness in the trial of these cases. The Court held a telephone conference call with Mr. Bleeker and counsel for respondent to discuss respondent's motion. During that call, Mr. Bleeker informed the Court that petitioners did not intend to raise reasonable reliance on a tax professional as a defense to the accuracy-related penalties.

the Schmidts properly excluded the payments under section 119. We have found to the contrary.

Under these circumstances, we are compelled to hold that Hillside Dairy is liable for the accuracy-related penalty for the years at issue.

To reflect the foregoing,

<u>Decisions will be</u>

<u>entered under Rule 155</u>.