T.C. Memo. 2003-324


UNITED STATES TAX COURT


RONALD D. WEELDREYER AND SUZANNE WEELDREYER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DREYER FARMS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 4676-01, 4679-01.     Filed November 25, 2003.


<u>Douglas Bleeker</u>, for petitioners.

<u>Douglas Polsky</u> and <u>Charles Berlau</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  These cases have been consolidated for trial, briefing, and opinion.  In separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income

tax and accuracy-related penalties under section 6662[1] for 1995, 1996, and 1997 as follows:

Ronald & Suzanne Weeldreyer, Docket No. 4676-01:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1995 | $2,393 | -- |
| 1996 | 3,011 | -- |
| 1997 | 4,619 | -- |

Dreyer Farms, Inc., Docket No. 4679-01:

| Year Ended | Deficiency | Penalty Sec. 6662(a) |
|------------|-----------|----------------------|
| 11/30/95 | $2,368 | $473.60 |
| 11/30/96 | 3,213 | 642.60 |
| 11/30/97 | 3,264 | 652.80 |

The issues for decision are:

(1) Whether amounts paid by Dreyer Farms, Inc. (Dreyer Farms or the corporation), to provide medical care, food, and lodging to its shareholders, Ronald D. Weeldreyer (Mr. Weeldreyer) and Suzanne Weeldreyer (Mrs. Weeldreyer) (collectively the Weeldreyers), and their children are (a) constructive dividends, as respondent maintains, or (b) employee medical care expenses and/or reimbursed employee expenses that are excluded from the Weeldreyers' gross income and deductible by Dreyer Farms as ordinary and necessary business expenses, as petitioners maintain; and

_____

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(2) whether Dreyer Farms is liable for the accuracy-related penalty under section 6662(a) for the taxable years ended November 30, 1995, 1996, and 1997.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

When the petitions were filed in these cases, the residence of the Weeldreyers, as well as the principal place of business of Dreyer Farms, was in Bridgewater, South Dakota.

A.   The Weeldreyers

The Weeldreyers are husband and wife; they have two sons. Between September 1975 and April 1991, the Weeldreyers acquired three contiguous tracts of land--two 80-acre tracts, one of which included a house[2] (the farmhouse), and a 160-acre tract.  The three tracts are referred to collectively as the Weeldreyer farm.

The Weeldreyers raise corn and soybeans on the Weeldreyer farm.  Their farming activities entail the planting, cultivation, harvesting, drying, storage, and sale of corn and soybeans.

---

[2]The Weeldreyers have resided in the farmhouse since 1975.

B.    Dreyer Farms

On April 28, 1995, Dreyer Farms was incorporated under the laws of the State of South Dakota.[3]  Dreyer Farms was organized primarily (1) to buy, distribute, sell, lease, and deal in all kinds of farmland and real estate and (2) to carry on the business of farming.

On August 3, 1995, the Weeldreyers conveyed to Dreyer Farms the Weeldreyer farm, including the farmhouse.  Dreyer Farms thereafter assumed the mortgage on the property.  After the conveyance, the Weeldreyers no longer individually owned any farmland.

The Weeldreyers have been the sole shareholders, officers, and directors of Dreyer Farms since its incorporation.  Mr. Weeldreyer has been president, treasurer, and a director, and Mrs. Weeldreyer has been secretary and a director, of Dreyer Farms.

The first meeting of the shareholders of Dreyer Farms was held on May 18, 1995.  At that meeting, the shareholders adopted corporate bylaws.  Article IV, section 10, of the bylaws provides:

> SECTION 10.  Repayment of Disallowed Expenses.
> Any expense paid by the Corporation which is finally
> determined as a personal expense of any officer or

---

[3]Douglas Bleeker, counsel for petitioners, prepared the articles of incorporation, bylaws, minutes of meetings, and other corporate documents for Dreyer Farms.

employee and disallowed as Corporation expense shall be repaid by the officer or employee to the Corporation within Twenty-four (24) months of the final determination by the Internal Revenue Service with interest at Three (3%) below the New York Prime Rate on the date of final determination.

A similar repayment obligation was set forth in a resolution adopted by the board of directors of Dreyer Farms at the directors' first meeting held on May 18, 1995. At that meeting, the directors also adopted the following resolution:

> RESOLVED that the corporation [sic] officers and employees shall be required to live at the worksite of the corporation to ensure security for the corporation property and operations. The officers and employees shall be required to live on the worksite to supervise the care and feeding of the livestock of the corporation. The corporation shall supply said officers and employees all of their food and lodging while living at said worksite. That all officers and employees shall be considered on duty when at the worksite and therefore entitled to such benefits.

In addition, at their first meeting, the directors adopted a medical reimbursement plan covering all "employees and officers executing management responsibilities" and their spouses and dependents. The medical reimbursement plan provides for the payment of all medical expenses "deductible on Form 1040", including expenses for drugs, doctor, hospital, and eyeglasses, to the extent not compensated by insurance or otherwise. Under the plan, each participant is entitled to a maximum reimbursement of $15,000 per year.

Dreyer Farms also paid the premiums on a health insurance policy covering the Weeldreyers and their children. The health

insurance policy had been in effect before Dreyer Farms was incorporated. Mrs. Weeldreyer was the named insured;[4] Mr. Weeldreyer and the children were insured as her dependents. Dreyer Farms paid the insurance premiums directly to the insurance company and paid the medical expenses directly to the medical providers.

C.   Farm Leases

1.   Weeldreyer Farm

During 1996 and 1997, Dreyer Farms leased the Weeldreyer farm to the Weeldreyers under a "share-crop" arrangement.[5] Pursuant to that arrangement the gross proceeds from the sale of all crops grown on the farm, as well as all payments received under Federal conservation programs (or any other Federal, State, or local governmental programs), were to be divided 40 percent to Dreyer Farms and 60 percent to the Weeldreyers. Dreyer Farms was to retain title and possession of all crops grown on its land until the 40/60 division had been made. Dreyer Farms and Mr. Weeldreyer agreed that on a respective 40/60 basis each would supply the fertilizer, chemicals, and seed. The Weeldreyers agreed (1) to farm the land; (2) to provide all labor and other

---

[4]The insurance company issued policies to the oldest person in the household. Mrs. Weeldreyer was named the insured because she is a few months older than Mr. Weeldreyer.

[5]The farm leases, dated Mar. 1, 1996 and 1997, erroneously named the Weeldreyers as the lessor and Dreyer Farms as the lessee.

items required in producing, harvesting, and marketing the crops; (3) to furnish all tools, farm implements, machinery, and hired help necessary to cultivate and manage the farm; (4) to protect the crops from injury and waste; (5) to till the land after harvesting the crops; and (6) to rotate the crops from year to year. Dreyer Farms agreed to furnish all necessary materials, and the Weeldreyers agreed to supply all necessary labor, to maintain all fences and other improvements on the farm.

2. Bleeker Enterprises, Inc. and Alfred Tammen Leases

During 1996 and 1997, Dreyer Farms leased farmland from Bleeker Enterprises, Inc.[6] (Bleeker Enterprises), on a share-crop basis. Pursuant to these farm leases, Dreyer Farms received 60 percent, and Bleeker Enterprises received 40 percent, of the crop. Mr. Weeldreyer, as an employee of Dreyer Farms, did the actual farming of the Bleeker Enterprises farm. The Bleeker Enterprises farm was located approximately 5 miles from the Weeldreyer farm.

In addition to leasing the Bleeker Enterprises farm, Dreyer Farms leased farmland from Alfred Tammen (the Tammen farm) on a cash-rent basis.[7]

---

[6]Bleeker Enterprises, Inc., is owned by petitioners' counsel (Douglas Bleeker) and his family.

[7]Mr. Tammen is Mr. Weeldreyer's cousin.

D.    Mr. Weeldreyer's Separate Farming Activity

During the years at issue, Mr. Weeldreyer individually (and not as an employee of Dreyer Farms) farmed at least three additional properties.[8]  One of these farms was located across the road from the Weeldreyer farm.  The other farms were located 2 to 5 miles away.  The grain from these other farms was stored on the Weeldreyer farm and commingled with the grain belonging to Dreyer Farms.

E.    Compensation and Payment of Food, Lodging, and Medical Expenses

Mr. Weeldreyer was the sole employee of Dreyer Farms.[9] Dreyer Farms paid Mr. Weeldreyer, as an officer/employee, $750 in 1995 and 1996 and $1,000 in 1997.

Following the transfer of the Weeldreyer farm to Dreyer Farms, the Weeldreyers continued to use the farmhouse as their residence.  Dreyer Farms paid for (1) the food consumed by the Weeldreyers and their children, (2) the utilities, property tax, insurance, remodeling, landscaping, and repairs and maintenance for the farmhouse, and (3) the telephone used by the Weeldreyers. In addition, Dreyer Farms paid for all the medical care expenses of the Weeldreyers and their children.

---

[8]In addition, in 1995, Mr. Weeldreyer did custom hire work for which he received $1,175.

[9]Although the Weeldreyers' two sons were not employees of Dreyer Farms, they helped with the farming chores.

Dreyer Farms did not pay dividends for fiscal years ended November 30, 1995, 1996, and 1997.

F.    Income Tax Returns

Mr. Bleeker (petitioners' counsel) prepared the Weeldreyers' joint Forms 1040, U.S. Individual Income Tax Return, and Dreyer Farms' Forms 1120, U.S. Corporation Income Tax Return, for the years at issue.

1.    Dreyer Farms

Dreyer Farms filed timely its Forms 1120 for the taxable years ended November 30, 1995, 1996, and 1997.  On these returns Dreyer Farms reported total income and total deductions as follows:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Total income | $32,327 | $56,694 | $61,823 |
| Total deductions | 23,651 | 51,368 | 44,841 |
| Taxable income | 8,676 | 5,326 | 16,982 |

Included in the total expenses deducted by Dreyer Farms were the following items for food, lodging, and medical expenses provided to the Weeldreyers:

|                          | 11/30/95 | 11/30/96 | 11/30/97 |
|--------------------------|----------|----------|----------|
| Food & Lodging           |          |          |          |
|   Property tax--house       | $1,283   | $1,567   | $1,401   |
|   Property insurance--house | 540      | 1,042    | 1,289    |
|   Food for employees        | 4,406    | 7,179    | 7,712    |
|   Utilities--house          | 1,694    | 2,362    | 2,235    |
|   Depreciation--house       | 2,357    | 3,219    | 3,326    |
|   Landscaping               | 256      | 216      | --       |
|   Remodeling costs          | 1,729    | --       | --       |
|   Repairs and maintenance   | --       | 82       | --       |
|   Telephone                 | --       | --       | 338      |
|   Food & lodging expenses   | 12,265   | 15,667   | 16,301   |
| Medical                  |          |          |          |
|   Health insurance          | 3,007    | 3,331    | 3,058    |
|   Medical expenses          | 509      | --       | --       |
|   Medical doctor            | --       | 876      | 2,378    |
|   Dental                    | --       | 1,544    | --       |
|   Prescriptions             | --       | --       | 20       |
|   Medical costs             | 3,516    | 5,751    | 5,456    |

2.   The Weeldreyers

The Weeldreyers timely filed their joint income tax returns for 1995, 1996, and 1997. On these returns, the Weeldreyers reported Mr. Weeldreyer's wages from Dreyer Farms. They reported farming income (including their 60-percent share of the Weeldreyer farm crop) as self-employment income. They did not report any income attributable to their food, lodging-related, and medical expenses paid by Dreyer Farms. On Schedules F, Profit or Loss from Farming, the Weeldreyers reported gross income, total expenses, and net profit from their separate farming activities for 1995, 1996, and 1997 as follows:

|               | 1995      | 1996      | 1997      |
|---------------|-----------|-----------|-----------|
| Gross income  | $102,251  | $138,137  | $161,651  |
| Total expenses| 82,533    | 114,258   | 120,196   |
| Net profit    | 19,718    | 23,879    | 41,455    |

G.   Notices of Deficiency

On January 8, 2001, respondent timely mailed to the Weeldreyers a statutory notice of deficiency for 1995, 1996, and 1997 (the Weeldreyer notice of deficiency).  Also on January 8, 2001, respondent timely mailed to Dreyer Farms a statutory notice of deficiency for its fiscal years ended November 30, 1995, 1996, and 1997 (the Dreyer Farms notice of deficiency).

In the Dreyer Farms notice of deficiency, respondent disallowed the food, lodging, and medical expenses deducted by Dreyer Farms, totaling $15,781 for 1995, $21,418 for 1996, and $21,757 for 1997.  Respondent determined that (1) Dreyer Farms failed to establish that the food and lodging expenses were ordinary and necessary business expenses under section 162 and (2) those items are the Weeldreyers' personal expenses.  Respondent further determined that Dreyer Farms was liable for the accuracy-related penalty under section 6662(a).

In the Weeldreyer notice of deficiency, respondent determined that payments by Dreyer Farms of the Weeldreyers' food, lodging, and medical expenses resulted in constructive dividends as follows:

|                           | 11/30/95 | 11/30/96 | 11/30/97 |
|---------------------------|----------|----------|----------|
| Food & lodging[1]         | $12,433  | $19,919  | $19,573  |
| Medical                   | 3,516    | 5,751    | 5,456    |
| Total dividends           | 15,949   | 25,670   | 25,029   |

[1]The record does not explain why the amounts of dividends for food and lodging expenses included in the Weeldreyers' income exceed the amounts disallowed as deductions to Dreyer Farms.

OPINION

Issue 1. Expenses Incurred by Dreyer Farms To Provide Medical Benefits, Food, and Housing to the Weeldreyers in 1995, 1996, and 1997

A. Positions of the Parties[10]

Respondent disallowed deductions taken by Dreyer Farms for medical costs (health insurance premiums and other medical care expenses), food, lodging (including property insurance, property taxes, remodeling, landscaping, maintenance and repair, telephone, and utilities for the farmhouse), and depreciation of the farmhouse. Respondent asserts that the medical costs, food,

[10]Under certain circumstances, sec. 7491 places the burden of proof or production on the Commissioner. Sec. 7491 applies to court proceedings arising in connection with tax examinations beginning after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726. Petitioners timely filed their returns for the years at issue. Hence, all of the returns were filed on or before Apr. 15, 1998. The record does not disclose when the examination of petitioners' tax returns began, and it is possible that the examination began before July 23, 1998. Petitioners do not contend that sec. 7491 applies in these cases, and they have not otherwise asserted that respondent has the burden of proof or production with respect to any issue presented in these cases. We therefore conclude that sec. 7491 does not apply, and petitioners have the burden of proof and production.

and lodging expenses are the Weeldreyers' personal, family, and living expenses and that payments of these expenses by Dreyer Farms constitute constructive dividends to the Weeldreyers. On the other hand, petitioners assert that all the expenditures are reasonable and necessary business expenses, deductible by Dreyer Farms and excluded from the Weeldreyers' income.

Petitioners contend that the medical costs are employee benefits, deductible by the employer and excludable from the employee's income under sections 105 and/or 106. Petitioners further maintain that Dreyer Farms provided food and lodging to Mr. Weeldreyer in his capacity as an employee and that such was done for the convenience of Dreyer Farms. Consequently, petitioners assert that the food and lodging expenses are employer-provided "meals and lodging", the costs for which are excluded from the Weeldreyers' income under section 119 and deductible by Dreyer Farms. Petitioners further assert that, as owner and lessor of the farmhouse, Dreyer Farms is entitled to deduct (1) the expenditures for insurance, remodeling, landscaping, and repairs and maintenance as reasonable and necessary business expenses under section 162, (2) the property taxes under either section 162 or 164, and (3) the depreciation of the farmhouse under section 167. Petitioners posit that these latter expenses are not the Weeldreyers' personal expenses because they are not the owners of the property.

B.   Medical Expenses

We first shall decide whether the payments by Dreyer Farms of the medical expenses are excludable from the Weeldreyers' gross income under sections 105 and 106 and deductible by the corporation as ordinary and necessary business expenses under section 162(a).

Under section 106, "an employee's gross income does not include employer-provided coverage (e.g., accident and health insurance premiums) under an accident and health plan." Rugby Prods. Ltd. v. Commissioner, 100 T.C. 531, 535 (1993). The employer may provide coverage under an accident or health plan by paying the premium (or a portion of the premium) on an accident or health insurance policy covering one or more employees or by contributing to a separate trust or fund. Sec. 1.106-1, Income Tax Regs.

Under the general rule of section 105(a), amounts received by an employee through accident and health insurance for personal injury or sickness, to the extent attributable to nontaxed employer contributions, are includable in the employee's gross income. Amounts received under an accident or health plan for employees are treated as amounts received through accident or health insurance. Sec. 105(e). An exception to the general rule allows an employee to exclude from gross income amounts received to reimburse the employee for expenses incurred by the employee

for the medical care (as defined in section 213(d)[11]) of the employee and the employee's spouse and dependents.  Sec. 105(b).

For the reasons set forth below, we agree with petitioners that pursuant to sections 105 and/or 106 payments by Dreyer Farms for medical expense reimbursements and health insurance premiums need not be included in the Weeldreyers' gross income for 1995, 1996, and 1997.

Section 105(e) requires first, that the benefits be received under a "plan," and second, that the plan be "for employees", rather than for some other class of persons such as shareholders and their relatives.  Larkin v. Commissioner, 48 T.C. 629, 635 (1967), affd. 394 F.2d 494 (1st Cir. 1968).  After giving due consideration to the record before us, we conclude that Dreyer Farms' medical plan (payment of health insurance premiums and medical expense reimbursements) satisfies both the "plan" and "for employees" requirements of section 105(e).

Section 1.105-5(a), Income Tax Regs., provides guidelines as to what constitutes an accident or health plan.  A plan may cover one or more employees, and different plans may be established for different employees or classes of employees.  Id.  The regulations do not require that there be a written plan or that there be enforceable employee rights under the plan, so long as

---

[11]Sec. 213(d)(1)(D) includes amounts paid for medical insurance in the definition of medical care.

the participant has notice or knowledge of the plan.  Wigutow v. Commissioner, T.C. Memo. 1983-620.

In the instant cases, a plan (as defined in section 1.105-5(a), Income Tax Regs.) existed.  Dreyer Farms adopted a written medical reimbursement plan identifying who was eligible to participate, what expenses would be reimbursed, and how participants were to make claims for reimbursement.  The plan was adopted at the first meeting of the board of directors.

Mr. Weeldreyer had knowledge of the medical reimbursement plan as well as the health insurance policy.  Moreover, there is no doubt that the medical reimbursements provided under the written plan were intended to complement benefits provided by health insurance.  Thus, the corporation's medical plan included health insurance as well as the medical reimbursements.  And finally, we are satisfied that the corporation's medical plan was for Mr. Weeldreyer's benefit as an employee of Dreyer Farms, and not for his benefit as one of the corporation's shareholders.

Plans limited to employees who are also shareholders are not per se disqualified under section 105(b).  Larkin v. Commissioner, supra at 635 n.5.  In this regard, we have sustained plans for corporate officers who were also shareholders because those officers had central management roles in conducting the business of the corporation.  Wigutow v. Commissioner, supra; Epstein v. Commissioner, T.C. Memo. 1972-53; Seidel v.

Commissioner, T.C. Memo. 1971-238; Smith v. Commissioner, T.C.
Memo. 1970-243; Bogene, Inc. v. Commissioner, T.C. Memo.
1968-147.

Respondent has stipulated that during the years at issue Mr.
Weeldreyer was an employee of Dreyer Farms.  Indeed, Mr.
Weeldreyer was the corporation's only employee.  And without Mr.
Weeldreyer's involvement, Dreyer Farms could not have conducted
its farming operations.

Mr. Weeldreyer's compensation for services rendered to
Dreyer Farms was his salary and employee benefits.  Respondent
does not contend that Mr. Weeldreyer received excessive
compensation.  Indeed, respondent contends that Mr. Weeldreyer
was undercompensated for his services.

Although Mrs. Weeldreyer did not work for Dreyer Farms,
payment of her medical expenses was based on her status as Mr.
Weeldreyer's spouse.  Likewise, payment of the medical expenses
for the Weeldreyers' children was based on their status as Mr.
Weeldreyer's dependents.  The derivative participation of Mr.
Weeldreyer's spouse and dependents is plainly contemplated both
by the medical plan and by section 105(b).

On the basis of the record before us, we conclude that
medical payments made for the benefit of the Weeldreyers and
their children were made under a plan for employees and not for
shareholders.  Accordingly, during the years at issue, the

medical payments made by Dreyer Farms pursuant to its medical plan (the insurance premiums and other medical care expenditures) are excludable from the Weeldreyers' gross income under section 105(b).

Section 162(a) permits a taxpayer to deduct all ordinary and necessary expenses incurred during the taxable year in carrying on the taxpayer's trade or business. An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943).

When payments for medical care are properly excludable from an employee's income because they are made under a "plan for employees", they are deductible by the employer as ordinary and necessary business expenses under section 162(a). Sec. 1.162-10(a), Income Tax Regs. Consequently, Dreyer Farms is entitled to deduct the insurance premiums and medical reimbursement payments under section 162(a).

C.  Food, Property Insurance, Property Taxes, Remodeling, Landscaping, Maintenance and Repair, Utilities, Telephone, and Depreciation

1.  Section 119:  Employer-Provided Meals and Lodging

We next decide whether the food and lodging expenses are employer-provided meals and lodging expenses, excludable from the Weeldreyers' income under section 119 and deductible by Dreyer Farms under section 162.

Meals and lodging furnished to an employee by his employer are excluded from the employee's gross income under section 119 if the meals and lodging are provided for the convenience of the employer on the premises of the employer.  In the case of lodging, the employee must be required to accept the lodging on the business premises of his employer as a condition of employment.

Meals and lodging are furnished for the "convenience of the employer" if there is a direct nexus between the meals and lodging furnished and the asserted business interests of the employer served thereby.  McDonald v. Commissioner, 66 T.C. 223, 230 (1976).  Petitioners assert that Mr. Weeldreyer, as the corporation's sole employee, was required to be available for duty 24 hours a day.

Dreyer Farms leased the Weeldreyer farm to the Weeldreyers. Dreyer Farms contracted with Mr. Weeldreyer as a tenant, not as its employee, to perform all necessary work.

It is well settled that "Ordinarily, taxpayers are bound by the form of the transaction they have chosen; taxpayers may not in hindsight recast the transaction as one that they might have made in order to obtain tax advantages."  Framatome Connectors USA Inc. v. Commissioner, 118 T.C. 32, 70 (2002) (citing Estate of Leavitt v. Commissioner, 875 F.2d 420, 423 (4th Cir. 1989), affg. 90 T.C. 206 (1988), and Grojean v. Commissioner, 248 F.3d 572, 576 (7th Cir. 2001), affg. T.C. Memo. 1999-425).  Here, inasmuch as Mr. Weeldreyer farmed the Weeldreyer farm as a tenant, and not as an employee of Dreyer Farms, the food and lodging in question were not furnished to Mr. Weeldreyer as a corporate employee for the convenience of his employer.  Thus, the food and lodging expenses at issue are not section 119(a) meals and lodging expenses.

2.    Deductibility of Expenses Related to the Leasing of the Weeldreyer Farm

During the years at issue, Dreyer Farms' business activities included leasing the Weeldreyer farm.  It leased the farm, including the farmhouse, to the Weeldreyers and received rent in the form of 40 percent of the crops grown on the farm. Therefore, we look to the terms of the farm leases to determine whether expenses for maintenance and repair, remodeling, landscaping, insurance, telephone, utilities, depreciation, and taxes are the expenses of Dreyer Farms or the Weeldreyers.

### a. Maintenance and Repair, Remodeling, and Landscaping

Necessary expenses incurred to maintain property used in a trade or business in efficient operating condition ordinarily are deductible. Sec. 162(a); Jacks v. Commissioner, T.C. Memo. 1988-237; Gilles Frozen Custard, Inc. v. Commissioner, T.C. Memo. 1970-73. Likewise, the cost of repairs "which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense". Sec. 1.162-4, Income Tax Regs. Also, under appropriate circumstances, landscaping expenses may be deductible when the expenses legitimately are connected with the taxpayer's trade or business and the requirements for deductibility otherwise are met. Hefti v. Commissioner, T.C. Memo. 1988-22, affd. 894 F.2d 1340 (8th Cir. 1989); Rhoads v. Commissioner, T.C. Memo. 1987-335.

Dreyer Farms deducted repair and maintenance expenses of $82 in 1996, remodeling expenses of $1,729 in 1995, and landscaping expenses of $256 in 1995 and $216 in 1996. Petitioners have not described or explained the maintenance and repair, the landscaping, or the remodeling. Dreyer Farms treated the remodeling as a repair (by deducting the cost rather than capitalizing it), and we shall do likewise.

The farmhouse is an improvement on the leased property. Under the terms of the farm leases, Dreyer Farms agreed to

furnish all necessary materials to maintain all improvements on the property, and the Weeldreyers agreed to supply all necessary labor.

Petitioners have offered no evidence to show that the expenditures for maintenance and repair, the landscaping, or the remodeling were costs for materials (Dreyer Farms' obligation), as opposed to costs for labor (the Weeldreyers' obligation). Although that portion of these expenditures allocable to materials would be the corporation's obligation (and would be deductible by it under section 162(a)), from the record before us we are unable to reasonably apportion the expenditures between the costs of labor and materials. While it is within the purview of this Court to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we must have some basis upon which to make the estimate, Williams v. United States, 245 F.2d 559 (5th Cir. 1957). Because we have no such evidence, we hold that the deductions taken for repair and maintenance, remodeling, and landscaping are not allowable.

b. Property Insurance

Dreyer Farms deducted $540 in 1995, $1,042 in 1996, and $1,289 in 1997 for property insurance. "Certain business-related insurance expenses unquestionably are deductible under section 162(a)." Metrocorp, Inc. v. Commissioner, 116 T.C. 211, 245

(2001) (citing section 1.162-1(a), Income Tax Regs.). The farm leases do not require the Weeldreyers to provide property insurance covering the farmhouse or other improvements on the property. The property insurance is an ordinary and necessary business expense of Dreyer Farms (the owner of the property) and not a personal, family, or living expense of the Weeldreyers. We hold, therefore, Dreyer Farms is entitled to deduct the insurance expenses as claimed in each of the years at issue.

        c.    Utilities and Telephone

Dreyer Farms deducted utilities expenses of $1,694 in 1995, $2,362 in 1996, and $2,235 in 1997 and telephone expenses of $338 in 1997. Utilities and telephone expenses may be deductible under section 162(a) if the expenses incurred are ordinary and necessary in carrying on a trade or business. Vanicek v. Commissioner, 85 T.C. 731, 742 (1985); Sengpiehl v. Commissioner, T.C. Memo. 1998-23; Green v. Commissioner, T.C. Memo. 1989-599.

Here, the farm leases did not contain any provisions regarding the utilities or telephone for the farmhouse. Petitioners did not produce any utility or telephone bills, canceled checks, or testimony to identify that, if any, portion of the utility and telephone expenses related to the corporation's business. We have no basis for making any allocation of the expenses. Thus, petitioners have failed to

establish that Dreyer Farms is entitled to any deduction for utilities or telephone expenses.

### d. Depreciation

Dreyer Farms deducted $2,357 in 1995, $3,219 in 1996, and $3,326 in 1997 for depreciation of the farmhouse. Section 167(a) allows a depreciation deduction from gross income for property used in the taxpayer's trade or business or held for the production of income. Ordinarily, depreciation or amortization is available to an owner of an asset with respect to the owner's basis in the asset. Dreyer Farms owned the Weeldreyer farm, including the farmhouse. One of the business activities of Dreyer Farms was the leasing of the Weeldreyer farm, including the farmhouse. Thus, the farmhouse is property used in the corporation's trade or business.

We hold that Dreyer Farms is entitled to a deduction for depreciation of the farmhouse for each of the years at issue as claimed.

### e. Taxes

Dreyer Farms deducted property taxes of $1,283 in 1995, $1,567 in 1996, and $1,401 in 1997 attributable to the farmhouse. Dreyer Farms owned the Weeldreyer farm. Section 164(a)(1) allows the owner of property a deduction for real property taxes. We hold, therefore, that Dreyer Farms may deduct property taxes as claimed in the years at issue.

f.    Summary of Food and Lodging Expenses

To summarize, Dreyer Farms may deduct the following expenses for the years at issue:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Property tax--house | $1,283 | $1,567 | $1,401 |
| Property insurance--house | 540 | 1,042 | 1,289 |
| Depreciation--house | 2,357 | 3,219 | 3,326 |
| Total | 4,180 | 5,828 | 6,016 |

Dreyer Farms may not deduct the following food and lodging expenses:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Food for employees | $4,406 | $7,179 | $7,712 |
| Utilities--house | 1,694 | 2,362 | 2,235 |
| Landscaping | 256 | 216 | -- |
| Remodeling costs | 1,729 | -- | -- |
| Repairs and maintenance | -- | 82 | -- |
| Telephone | -- | -- | 338 |
| Total | 8,085 | 9,839 | 10,285 |

3.    Inclusion of Payments in the Weeldreyers' Gross Income

When a corporation makes an expenditure that primarily benefits the corporation's shareholders, the amount of the expenditure may be taxed to the shareholders as a constructive dividend.  Hood v. Commissioner, 115 T.C. 172 (2000); Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980); Am. Insulation Corp. v. Commissioner, T.C. Memo. 1985-436.  We have found that expenses for food, repair and maintenance, remodeling, landscaping, utilities, and telephone paid by Dreyer Farms are the Weeldreyers' expenses.  Petitioners contend that the payments

are not constructive dividends because Mr. Weeldreyer was required to repay any amounts that Dreyer Farms could not deduct for Federal income tax purposes. Petitioners cite Cepeda v. Commissioner, T.C. Memo. 1993-477, to support their position. Cepeda, however, is inapposite. In that case, the taxpayers claimed that advances made by the corporation were loans rather than employee compensation or constructive dividends. Petitioners do not contend that the corporate payments of Mr. Weeldreyer's expenses were loans.

For Federal income tax purposes, a transaction will be characterized as a loan if there was "an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment." Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988). In the instant cases, when the payments were made there was no unconditional obligation on the part of Mr. Weeldreyer to repay a specific dollar amount to the corporation. His obligation to repay any of the payments was in general terms. The amount of repayment could not be determined when the payments were made. Any obligation to repay any amount could not arise before respondent disallowed the deduction for the expenses; i.e, when the Dreyer Farms notice of deficiency was issued in January 2001. Thus, the payments were not loans. Since the payments when made

by Dreyer Farms did not constitute business expenses of the corporation or loans to the Weeldreyers, the conclusion is inescapable that the payments constituted distributions by Dreyer Farms to the Weeldreyers.

In N. Am. Oil Consol. v. Burnett, 286 U.S. 417, 424 (1932), the Supreme Court stated:

> If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

It is clear, therefore, under the claim of right doctrine, the amounts paid by Dreyer Farms in 1995, 1996, and 1997 were taxable to the Weeldreyers in those years. See Pahl v. Commissioner, 67 T.C. 286, 289 (1976).

If a taxpayer is required to repay income recognized under the claim of right doctrine in an earlier tax year, section 1341 permits the taxpayer, in effect, to elect to compute his taxes for the year of repayment in a manner that gives the taxpayer the equivalent of a refund (without interest) of tax for the earlier year. Specifically, section 1341(a)(5) permits the tax for the year of repayment to be reduced by the amount of the tax paid for the year of receipt that was attributable to the inclusion of the repaid amount in that year's gross income. United States v. Skelly Oil Co., 394 U.S. 678, 682 (1969). Section 1341, however, requires actual repayment, restoration, or restitution. Chernin

v. United States, 149 F.3d 805, 816 (8th Cir. 1998); Kappel v.
United States, 437 F.2d 1222, 1226 (3d Cir. 1971); Estate of
Smith v. Commissioner, 110 T.C. 12 (1998).

Although the bylaws of Dreyer Farms require Mr. Weeldreyer
to repay amounts for which the corporation is disallowed a
deduction, Mr. Weeldreyer does not claim that he has repaid the
disallowed amounts. Indeed, there is no evidence in the record
to show that he did. Therefore, section 1341 does not apply. We
hold that Dreyer Farms' payment of the Weeldreyers' food, repair
and maintenance, remodeling, landscaping, utilities, and
telephone expenses constitutes income to the Weeldreyers.

Petitioners argue that the expenses are meals and lodging
expenses excludable under section 119. We have found to the
contrary.

Further, although the repair and maintenance, remodeling,
and landscaping expenses were incurred by the Weeldreyers as
tenants under the farm lease, those expenses relate to the use of
the farmhouse, not to the raising of the crops. Thus, those
expenses, as well as the food, utilities, and telephone expenses,
are the Weeldreyers' personal living expenses.

Personal, family, or living expenses are not deductible
except as otherwise expressly permitted. Sec. 262. A taxpayer's
expenses for his or her own meals and lodging are personal
because they would have been incurred whether or not the taxpayer

had engaged in any business activity.  <u>Christey v. United States</u>, 841 F.2d 809, 814 (8th Cir. 1988); <u>Moss v. Commissioner</u>, 80 T.C. 1073, 1078 (1983), affd. 758 F.2d 211 (7th Cir. 1985).  In order for personal living expenses to qualify as a deductible business expense under section 162(a), the taxpayer must demonstrate that the expenses were different from, or in excess of, what he would have spent for personal purposes.  <u>Sutter v. Commissioner</u>, 21 T.C. 170, 173 (1953).  Petitioners did not produce any bills, canceled checks, or testimony to substantiate any portion of the expenses that relates to Mr. Weeldreyer's separate farming business.  Thus, petitioners have failed to establish that the Weeldreyers are entitled to a deduction for any portion of the expenses under section 162.[12]

### 4.  <u>Rental Value of Residence</u>

The Weeldreyers leased the Weeldreyer farm, including the farmhouse, from Dreyer Farms.  Dreyer Farms received rent in the form of 40 percent of the crops grown on the farm.  The

---

[12]Except as otherwise provided, an individual is not allowed a deduction with respect to the use of a dwelling unit that is used by the individual as a residence. Sec. 280A(a).  The individual may, however, deduct expenses allocable to portions of the dwelling that are exclusively used for business purposes. Sec. 280A(c).  The Weeldreyers did not argue that their housing expenses are deductible under sec. 280A.  Therefore, we do not address the question of whether certain portions of their housing expenses may be deductible under that section.  We note, however, that the Weeldreyers have made no showing that the farmhouse, or any portion thereof, was used exclusively for business purposes.

Weeldreyers included only their 60 percent of the crop revenues in their income. They excluded the entire 40 percent paid to Dreyer Farms as rent, including the portion attributable to the farmhouse. In effect, they deducted the portion of the rent paid for the farmhouse. The rent of the farmhouse is their personal expense and is not deductible. See sec. 262.

The farm leases do not specify that portion of the rent to be paid for use of the farmhouse. Nor have the Weeldreyers provided any evidence to show that portion of the rent properly attributable to the farmhouse.

The amount of the constructive dividends respondent determined in the Weeldreyer notice of deficiency exceeds the amount of deductions disallowed in the Dreyer Farms notice of deficiency. The record does not explain that excess. Moreover, since the depreciation respondent disallowed as a deduction to Dreyer Farms was not an expenditure, we assume that adjustments in the Weeldreyer notice of deficiency did not include the depreciation.

We have computed the fair rental value of the farmhouse that was included in respondent's adjustment to the Weeldreyers' income as follows:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
| --- | --- | --- | --- |
| Dreyer Farms notice of deficiency |  |  |  |
| Disallowed food & lodging deductions | $12,265 | $15,667 | $16,301 |
| Less depreciation on residence | 2,357 | 3,219 | 3,326 |
| Food & lodging expenditures | 9,908 | 12,448 | 12,975 |

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Weeldreyer notice of deficiency adjustment for food & lodging provided by Dreyer Farms | $12,433 | $19,919 | $19,573 |
| Food & lodging expenditures | 9,908 | 12,448 | 12,975 |
| Adjustment for rental value of residence | 2,525 | 7,471 | 6,598 |

The Weeldreyers have not shown that the portion of the rent attributable to the farmhouse is less than the amounts for the years at issue, as computed above. We therefore hold that those amounts are properly included in the Weeldreyers' income for the years at issue.

5.  Summary of Adjustments to Weeldreyers' Income

The Weeldreyers' income from farming is increased by $2,525 in 1995, $7,471 in 1996, and $6,598 in 1997 to reflect the disallowance of deductions for the rental value of the farmhouse. In addition, the following personal expenses paid by Dreyer Farms are included in the Weeldreyers' income as constructive dividends for the years at issue:

|  | 1995 | 1996 | 1997 |
|---|---|---|---|
| Food | $4,406 | $7,179 | $7,712 |
| Utilities | 1,694 | 2,362 | 2,235 |
| Landscaping | 256 | 216 | -- |
| Remodeling costs | 1,729 | -- | -- |
| Repairs and maintenance | -- | 82 | -- |
| Telephone | -- | -- | 338 |
| Total | 8,085 | 9,839 | 10,285 |

Issue 2.  Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that Dreyer Farms is liable for the accuracy-related penalty under section 6662(a).  As pertinent here, section 6662(a) imposes a 20-percent penalty on the portion

of an underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

The penalty under section 6662(a) does not apply to any portion of an understatement of tax if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his/her proper tax liability for the year. Id. The good faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement. Sec. 1.6664-4(b), Income Tax Regs.

Despite the fact that petitioners have the burden of proof, see supra note 10, petitioners have made no showing that they made an attempt to comply with the tax rules and regulations with regard to those deductions taken by Dreyer Farms for the years at issue which have been disallowed. Hence, with respect to those deductions, petitioners have failed to show that Dreyer Farms was

not negligent.  Nor have petitioners showed that they acted in good faith with respect to, or that there was reasonable cause for, the position they took.

Further, petitioners do not claim that they relied on Mr. Bleeker or any other professional as to the tax treatment of the expenses for food and lodging.[13]  Petitioners simply assert that the accuracy-related penalty does not apply because Dreyer Farms properly claimed the deductions under section 162(a) and the Weeldreyers properly excluded the payments under section 119.  We have found to the contrary.

Under these circumstances, we are compelled to hold that Dreyer Farms is liable for the accuracy-related penalty for the years at issue.

To reflect the foregoing,

Decisions will be

entered under Rule 155.

---

[13]Before the trial in these cases, respondent filed a motion to disqualify Mr. Bleeker from his representation of petitioners. Respondent's motion was based, in part, on the premise that, if petitioners contend that they reasonably relied on Mr. Bleeker's advice with respect to the proper tax treatment of the payments at issue, then Mr. Bleeker would be required to testify as a witness in the trial of these cases.  The Court held a telephone conference call with Mr. Bleeker and counsel for respondent to discuss respondent's motion.  During that call, Mr. Bleeker informed the Court that petitioners did not intend to raise reasonable reliance on a tax professional as a defense to the accuracy-related penalties.