T.C. Memo. 2003-326

UNITED STATES TAX COURT

ROBERT W. TSCHETTER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

WOLF CREEK FARM, INC., Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 5271-01, 5272-01.     Filed November 25, 2003.

Douglas Bleeker, for petitioners.

Douglas Polsky and Charles Berlau, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  These cases have been consolidated for trial, briefing, and opinion.  In separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income

tax and accuracy-related penalties under section 6662[1] for 1995,

1996, and 1997 as follows:

Robert W. Tschetter, Docket No. 5271-01:

| Year | Deficiency |
|------|------------|
| 1995 | $1,185 |
| 1996 | 1,136 |
| 1997 | 1,095 |

Wolf Creek Farm, Docket No. 5272-01:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 1995 | $1,190 | $238 |
| 1996 | 1,234 | [1]247 |
| 1997 | 992 | [1]198 |

[1] Amounts are rounded to the nearest dollar.

The issues for decision are:

(1) Whether amounts paid by Wolf Creek Farm, Inc. (Wolf

Creek Farm or the corporation), to provide medical care, food,

and lodging to Robert W. Tschetter (Mr. Tschetter), one of its

shareholders, are (a) constructive dividends, as respondent

maintains, or (b) employee medical care expenses and/or

reimbursed employee expenses that are excluded from Mr.

Tschetter's gross income and deductible by Wolf Creek Farm as

ordinary and necessary business expenses, as petitioners

maintain; and

---

[1]All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

(2) whether Wolf Creek Farm is liable for the accuracy-related penalty under section 6662(a) for the taxable years ended November 30, 1995, 1996, and 1997.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

When the petitions were filed in these cases, the residence of Mr. Tschetter, as well as the principal place of business of Wolf Creek Farm, was in Bridgewater, South Dakota.

A.    Mr. Tschetter

Mr. Tschetter has lived with his parents his entire life (approximately 47 years). The family residence (the farmhouse) has been in the Tschetter family for over 70 years. On or about July 7, 1993, Mr. Tschetter's parents gave him the farmhouse and 79 acres of farm land on which the farmhouse is located (the homestead).

Since 1988, Mr. Tschetter has owned another 156 acres (the Tschetter farm). The Tschetter farm is approximately 1 mile from the homestead.

B.   Wolf Creek Farm

On December 29, 1993, Wolf Creek Farm was incorporated under the laws of the State of South Dakota.[2]  Wolf Creek Farm was organized primarily (1) to buy, distribute, sell, lease, and deal in all kinds of farmland and real estate, and (2) to carry on the business of farming.  On January 27, 1994, Mr. Tschetter conveyed the homestead, including the farmhouse, to Wolf Creek Farm.

Mr. Tschetter has owned 50 percent of the common stock, and 100 percent of the preferred stock, of Wolf Creek Farm since its incorporation.  His mother, Anna Tschetter, owned the remaining 50 percent of the common stock.  During the taxable years at issue, Mr. Tschetter was president, treasurer, and a director, and his mother was vice president, secretary, and a director, of Wolf Creek Farm.

The first meeting of the board of directors of Wolf Creek Farm was held on December 30, 1993.  At that first meeting, the directors adopted a medical reimbursement plan covering all "employees and officers executing management responsibilities" and their spouses and dependents.  The medical reimbursement plan provides for the payment of all medical care costs that would be "deductible on Form 1040" (before considering limitations).

---

[2]Douglas Bleeker, counsel for petitioners, prepared the articles of incorporation, bylaws, minutes of meetings, and other corporate documents for Wolf Creek Farm.

Under the plan, each participant is entitled to a maximum reimbursement of $12,500 per year.

At a meeting of the directors held on January 4, 1994, the board of directors of Wolf Creek Farm adopted the following resolution:

> RESOLVED that all officers and employees shall be required to repay to the corporation any monies for whatever source which may at any time be disallowed as a proper expense expenditure by the Internal Revenue Service within two (2) years at an interest rate of 3% below the New York Prime Rate, of the final determination of such matter.

In addition, at that meeting the directors adopted the following resolution:

> RESOLVED that the Corporation's officers and employees shall be required to live at the worksite of the Corporation to ensure security for the Corporation property and operations. The officers and employees shall be required to live on the worksite to supervise the care and feeding of the livestock of the corporation. The Corporation shall supply said officers and employees all of their food and lodging while living at said worksite. That all of the officers and employees shall be considered "on duty" when at the worksite and therefore entitled to such benefits.

C.  <u>Wolf Creek Farm's Business</u>

During the years at issue, Wolf Creek Farm leased the homestead to Mr. Tschetter under a written agreement titled "Farm Lease", dated December 1, 1994 (the 1995 lease). The initial term of the lease was for 1 year (to November 30, 1995); thereafter, the lease continued year to year until otherwise canceled. Under the lease agreement, Wolf Creek Farm was to

receive 30 percent of the "calf crop" and 40 percent of the "crop produced" on the homestead. Mr. Tschetter was entitled to the remaining crops and all amounts received under Federal conservation programs (or any other Federal, State, or local governmental programs).

Mr. Tschetter agreed (1) to farm the land; (2) to provide all labor and other items required in producing, harvesting, and marketing the crops; (3) to furnish all tools, farm implements, machinery, hired help, fertilizer, chemicals, and seed necessary to cultivate and manage the farm; (4) to protect the crops from injury and waste; (5) to till the land after harvesting the crops; and (6) to rotate the crops from year to year. Wolf Creek Farm agreed to furnish all necessary materials, and Mr. Tschetter agreed to supply all necessary labor, to maintain all fences and other improvements on the farm.

During the years at issue, Wolf Creek Farm conducted farming activities on property it rented from others, such as Mr. Tschetter's parents. Mr. Tschetter, as an employee of Wolf Creek Farm, did the actual farming of those other properties.

D.  Mr. Tschetter's Separate Business

During the years at issue, Mr. Tschetter(as a self-employed farmer) farmed the Tschetter farm. On August 29, 1997, Mr. Tschetter acquired an additional 79 acres; this property was approximately 1 mile from the homestead.

Mr. Tschetter owned cows, bulls, and heifers. He took care of the livestock and was in charge of the grain produced on the homestead and the Tschetter farm. Mr. Tschetter's responsibilities with respect to the livestock included feeding (most times once a day but on occasion, twice a day), routine care, and treatment of any sick animals. Once a year (usually in the winter), Mr. Tschetter took care of the livestock at calving time which ran 2-3 months and required that the calves be checked several times day and night.

Mr. Tschetter's responsibilities with respect to the production of grain included harvesting the grain, storing the grain in bins, and making the sure the grain did not spoil. Most of the grain produced was used for feeding the livestock.

E.    Compensation and Payment of Food, Lodging, and Medical Expenses

Mr. Tschetter was the only employee of Wolf Creek Farm. He kept the corporate books and paid its bills. For his services, Mr. Tschetter received $400 in 1995, $1,000 in 1996, and $2,000 in 1997.

Following the transfer of the homestead to Wolf Creek Farm, Mr. Tschetter and his parents continued to use the farmhouse as their residence. Wolf Creek Farm paid for (1) the food consumed by Mr. Tschetter (Mr. Tschetter's parents paid for their own

food) and (2) the utilities, property tax, and insurance for the farmhouse. In addition, Wolf Creek Farm paid Mr. Tschetter's medical care expenses.

Wolf Creek Farm did not pay dividends for its fiscal years ended November 30, 1995, 1996, and 1997.

F.    Income Tax Returns

Mr. Bleeker (petitioners' counsel) prepared Mr. Tschetter's Forms 1040, U.S. Individual Income Tax Return, and Wolf Creek Farm's Forms 1120, U.S. Corporation Income Tax Return, for the years at issue.

    1.    Wolf Creek Farm

Wolf Creek Farm filed timely its Forms 1120 for its fiscal years ended November 30, 1995, 1996, and 1997. On these returns, Wolf Creek Farm reported total income and total deductions as follows:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
| --- | --- | --- | --- |
| Total income | $38,269 | $53,676 | $46,793 |
| Total deductions | 38,114 | 52,963 | 43,405 |
| Taxable income | 155 | 713 | 3,388 |

Included in the total expenses deducted by Wolf Creek Farm were the following items for food, lodging, and medical expenses provided to Mr. Tschetter (amounts are rounded to the nearest dollar):

| | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Food & lodging | | | |
| Property tax--house | $257 | $208 | $190 |
| Property insurance--house | 667 | 631 | -- |
| Food for officers | 2,692 | 2,722 | 2,441 |
| Utilities--house | 1,991 | 2,016 | 2,081 |
| Depreciation--house | 569 | 587 | 575 |
| Food & lodging expenses | 6,176 | 6,164 | 5,287 |
| Medical | | | |
| Health insurance | 72 | | 908 |
| Doctor & prescriptions | 339 | 465 | 417 |
| Hospital | 1,345 | 1,426 | -- |
| Glasses | -- | 170 | -- |
| Medical costs | 1,756 | 2,061 | 1,325 |

2.  Mr. Tschetter's Returns

Mr. Tschetter timely filed his income tax returns for 1995, 1996, and 1997.  On these returns, Mr. Tschetter reported his wages from Wolf Creek Farm.  He reported farming income (including his share of all crops grown on the homestead) as self-employment income.  He did not report any income attributable to his food, lodging-related, and medical expenses paid by Wolf Creek Farm.  On Schedule F, Profit or Loss from Farming, Mr. Tschetter reported gross income, total expenses, and net loss from his separate farming activities for 1995, 1996, and 1997 as follows:

| | 1995 | 1996 | 1997 |
|---|---|---|---|
| Gross income | $94,029 | $115,921 | $106,775 |
| Total expenses | 94,429 | 117,479 | 107,745 |
| Net loss | (400) | (1,558) | (970) |

G. <u>Notices of Deficiency</u>

On January 31, 2001, respondent timely mailed to Mr. Tschetter a statutory notice of deficiency for 1995, 1996, and 1997 (the Tschetter notice of deficiency).  Also on January 31, 2001, respondent timely mailed to Wolf Creek Farm a statutory notice of deficiency for its fiscal years ended November 30, 1995, 1996, and 1997 (the Wolf Creek Farm notice of deficiency).

In the Wolf Creek Farm notice of deficiency, respondent disallowed the food, lodging, and medical expenses deducted by Wolf Creek Farm, totaling $7,932 for 1995, $8,225 for 1996, and $6,612 for 1997.  Respondent determined that (1) Wolf Creek Farm failed to establish that the food and lodging expenses were ordinary and necessary business expenses under section 162 and (2) those items constitute Mr. Tschetter's personal expenses. Respondent further determined that Wolf Creek Farm was liable for the accuracy-related penalty under section 6662(a).

In the Tschetter notice of deficiency, respondent determined that payments by Wolf Creek Farm of Mr. Tschetter's food, lodging, and medical expenses resulted in constructive dividends as follows:

|                          | 11/30/95 | 11/30/96 | 11/30/97 |
|--------------------------|----------|----------|----------|
| Food & lodging[1]        | $6,163   | $6,218   | $6,001   |
| Medical                  | 1,756    | 2,061    | 1,325    |
| Total dividends          | 7,919    | 8,279    | 7,326    |

[1]The record does not explain why the amounts of dividends for food and lodging expenses included in Mr. Tschetter's income exceed the amounts disallowed as deductions to Wolf Creek Farm.

OPINION

Issue 1.    Expenses Incurred by Wolf Creek Farm To Provide Medical Benefits, Food, and Housing to Mr. Tschetter in 1995, 1996, and 1997

A.    Positions of the Parties[3]

Respondent disallowed deductions taken by Wolf Creek Farms for medical costs (health insurance premiums and other medical care expenses), food, lodging (including property insurance, property taxes, and utilities for the farmhouse), and depreciation of the farmhouse.  Respondent asserts that the medical costs, food, and lodging expenses are Mr. Tschetter's

_____

[3]Under certain circumstances, sec. 7491 places the burden of proof or production on the Commissioner.  Sec. 7491 applies to court proceedings arising in connection with tax examinations beginning after July 22, 1998.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726.  Petitioners timely filed their returns for the years at issue.  Hence, all of the returns were filed on or before Apr. 15, 1998.  The record does not disclose when the examination of petitioners' tax returns began, and it is possible that the examination began before July 23, 1998.  Petitioners do not contend that sec. 7491 applies in these cases, and they have not otherwise asserted that respondent has the burden of proof or production with respect to any issue presented in these cases. We therefore conclude that sec. 7491 does not apply, and petitioners have the burden of proof and production.

personal, family, and living expenses and that payments of these expenses by Wolf Creek Farm constitute constructive dividends to Mr. Tschetter. On the other hand, petitioners assert that all the expenditures are reasonable and necessary business expenses, deductible by Wolf Creek Farm and excluded from Mr. Tschetter's income.

Petitioners contend that the medical costs are employee benefits, deductible by the employer and excludable from the employee's income under sections 105 and/or 106. Petitioners further maintain that Wolf Creek Farm provided food and lodging to Mr. Tschetter in his capacity as an employee and that such was done for the convenience of Wolf Creek Farm. Consequently, petitioners assert that the food and lodging expenses are employer-provided "meals and lodging", the costs for which are excluded from Mr. Tschetter's income under section 119 and deductible by Wolf Creek Farm. Petitioners further assert that, as owner and lessor of the farmhouse, Wolf Creek Farm is entitled to deduct (1) the expenditures for insurance on the farmhouse as reasonable and necessary business expenses under section 162, (2) the property taxes under either section 162 or 164, and (3) the depreciation of the farmhouse under section 167. Petitioners posit that these latter expenses are not Mr. Tschetter's personal expenses because he is not the owner of the property.

B.  Medical Expenses

We first shall decide whether the payments by Wolf Creek Farm of the medical expenses are excludable from Mr. Tschetter's gross income under sections 105 and 106 and deductible by the corporation as ordinary and necessary business expenses under section 162(a).

Under section 106, "an employee's gross income does not include employer-provided coverage (e.g., accident and health insurance premiums) under an accident and health plan." Rugby Prods. Ltd. v. Commissioner, 100 T.C. 531, 535 (1993).  The employer may provide coverage under an accident or health plan by paying the premium (or a portion of the premium) on an accident or health insurance policy covering one or more employees or by contributing to a separate trust or fund.  Sec. 1.106-1, Income Tax Regs.

Under the general rule of section 105(a), amounts received by an employee through accident and health insurance for personal injury or sickness, to the extent attributable to nontaxed employer contributions, are includable in the employee's gross income.  Amounts received under an accident or health plan for employees are treated as amounts received through accident or health insurance.  Sec. 105(e).  An exception to the general rule allows an employee to exclude from gross income amounts received to reimburse the employee for expenses incurred by the employee

for the medical care (as defined in section 213(d)) of the employee and the employee's spouse and dependents.  Sec. 105(b).

For the reasons set forth below, we agree with petitioners that pursuant to sections 105 and/or 106 payments by Wolf Creek Farm for reimbursement of medical care costs (including reimbursement for the health insurance premiums) need not be included in Mr. Tschetter's income for 1995, 1996, and 1997.

Section 105(e) requires first, that the benefits be received under a "plan", and second, that the plan be "for employees", rather than for some other class of persons such as shareholders and their relatives.  Larkin v. Commissioner, 48 T.C. 629, 635 (1967), affd. 394 F.2d 494 (1st Cir. 1968).  After giving due consideration to the record before us, we conclude that Wolf Creek Farm's medical reimbursement plan satisfies both the "plan" and "for employees" requirements of section 105(e).

Section 1.105-5(a), Income Tax Regs., provides guidelines as to what constitutes an accident or health plan.  A plan may cover one or more employees, and different plans may be established for different employees or classes of employees.  Sec. 1.105-5(a), Income Tax Regs.  The regulations do not require that there be a written plan or that there be enforceable employee rights under the plan, so long as the participant has notice or knowledge of the plan.  Wigutow v. Commissioner, T.C. Memo. 1983-620.

In the instant cases, a plan (as defined in section 1.105-5(a), Income Tax Regs.) existed. Wolf Creek Farm adopted a written medical reimbursement plan identifying who was eligible to participate, what expenses would be reimbursed, and how participants were to make claims for reimbursement. The plan was adopted at the first meeting of the board of directors.

Mr. Tschetter had knowledge of the medical reimbursement plan. Moreover, the medical reimbursements provided under the written plan included reimbursement for all "medical care" costs deductible on Form 1040, which include health insurance costs. Sec. 213(d)(1)(D). And finally, we are satisfied that the corporation's medical plan was for Mr. Tschetter's benefit as an employee of Wolf Creek Farm, and not for his benefit as one of the corporation's shareholders.

Plans limited to employees who are also shareholders are not per se disqualified under section 105(b). Larkin v. Commissioner, supra at 635 n.5. In this regard, we have sustained plans for corporate officers who were also shareholders because those officers had central management roles in conducting the business of the corporation. Wigutow v. Commissioner, supra; Epstein v. Commissioner, T.C. Memo. 1972-53; Seidel v. Commissioner, T.C. Memo. 1971-238; Smith v. Commissioner, T.C. Memo. 1970-243; Bogene, Inc. v. Commissioner, T.C. Memo. 1968-147.

Respondent has stipulated that during the years at issue Mr. Tschetter was an employee of Wolf Creek Farm. Indeed, Mr. Tschetter was the corporation's only employee. And without Mr. Tschetter's involvement, Wolf Creek Farm could not have conducted its farming operations.

Mr. Tschetter's compensation for services rendered to Wolf Creek Farm was his salary and employee benefits. Respondent does not contend that Mr. Tschetter received excessive compensation. Indeed, respondent contends that Mr. Tschetter was undercompensated for his services. In addition, we are mindful that Wolf Creek Farm did not pay medical expenses or health insurance premiums of its other shareholder, Mr. Tschetter's mother.

On the basis of the record before us, we conclude that medical payments made for the benefit of Mr. Tschetter were made under a plan for employees and not for shareholders. Accordingly, during the years at issue, the medical payments made by Wolf Creek Farm pursuant to its medical plan are excludable from Mr. Tschetter's gross income under section 105(b).

Section 162(a) permits a taxpayer to deduct all ordinary and necessary expenses incurred during the taxable year in carrying on the taxpayer's trade or business. An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent

occurrence in the type of business involved." <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.  See <u>Commissioner v. Heininger</u>, 320 U.S. 467, 471 (1943).

When payments for medical care are properly excludable from an employee's income because they are made under a "plan for employees," they are deductible by the employer as ordinary and necessary business expenses under section 162(a).  Sec. 1.162-10(a), Income Tax Regs.  Consequently, Wolf Creek Farm is entitled to deduct the insurance premiums and other medical reimbursement payments under section 162(a).

C.   <u>Food, Utilities, Property Insurance, Property Taxes, and Depreciation</u>

1.   <u>Section 119:  Employer-Provided Meals and Lodging</u>

We next decide whether the food and lodging-related expenses are employer-provided meals and lodging expenses, excludable from Mr. Tschetter's income under section 119 and deductible by Wolf Creek Farm under section 162.

Meals and lodging furnished to an employee by his employer are excluded from the employee's gross income under section 119 if the meals and lodging are provided for the convenience of the employer on the premises of the employer.  In the case of lodging, the employee must be required to accept the lodging on the business premises of his employer as a condition of employment.

Meals and lodging are furnished for the "convenience of the employer" if there is a direct nexus between the meals and lodging furnished and the asserted business interests of the employer served thereby.  McDonald v. Commissioner, 66 T.C. 223, 230 (1976).

Petitioners assert that Mr. Tschetter, as the corporation's sole employee, was required to be available for duty 24 hours a day.

Wolf Creek Farm leased the homestead to Mr. Tschetter.  Wolf Creek Farm contracted with Mr. Tschetter as a tenant, not as its employee, to perform all necessary work.

It is well settled that "Ordinarily, taxpayers are bound by the form of the transaction they have chosen; taxpayers may not in hindsight recast the transaction as one that they might have made in order to obtain tax advantages."  Framatome Connectors USA Inc. v. Commissioner, 118 T.C. 32, 70 (2002) (citing Estate of Leavitt v. Commissioner, 875 F.2d 420, 423 (4th Cir. 1989), affg. 90 T.C. 206 (1988), and Grojean v. Commissioner, 248 F.3d 572, 576 (7th Cir. 2001), affg. T.C. Memo. 1999-425). Here, inasmuch as Mr. Tschetter farmed the homestead as a tenant, and not as an employee of Wolf Creek Farm, the food and lodging in question were not furnished to Mr. Tschetter as a corporate

employee for the convenience of his employer.  Thus, the food and lodging expenses at issue are not section 119(a) meals and lodging expenses.

   2.   Deductibility of Expenses Related to the Leasing of the Homestead

During the years at issue, Wolf Creek Farm business activities included leasing the homestead.  It leased the homestead, including the farmhouse, to Mr. Tschetter and received rent in the form of a percentage of the crops grown on the farm.  Therefore, we look to the terms of the farm lease to determine whether expenses for utilities, depreciation, and taxes are the expenses of Wolf Creek Farm or Mr. Tschetter.

      a.   Property Insurance

Wolf Creek Farm deducted $667 in 1995 and $631 in 1996 for property insurance.  "Certain business-related insurance expenses unquestionably are deductible under section 162(a)."  Metrocorp, Inc. v. Commissioner, 116 T.C. 211, 245 (2001) (citing section 1.162-1(a), Income Tax Regs.).  The farm lease does not require Mr. Tschetter to provide property insurance covering the farmhouse or other improvements on the property.  The property insurance is an ordinary and necessary business expense of Wolf Creek Farm (the owner of the property) and not a personal, family, or living expense of Mr. Tschetter.  We hold, therefore, Wolf Creek Farm is entitled to deduct the insurance expenses as claimed in each of the years at issue.

b.  Utilities

Wolf Creek Farm deducted utilities expenses of $1,991 in 1995, $2,016 in 1996, and $2,081 in 1997.  Utilities expenses may be deductible under section 162(a) if the expenses incurred are ordinary and necessary in carrying on a trade or business. Vanicek v. Commissioner, 85 T.C. 731, 742 (1985); Senqpiehl v. Commissioner, T.C. Memo. 1998-23; Green v. Commissioner, T.C. Memo. 1989-599.

Here, the farm lease did not contain any provisions regarding the utilities for the farmhouse.  Petitioners did not produce any utility bills, canceled checks, or testimony to identify that, if any, portion of the utility expenses related to the corporation's business.  We have no basis for making any allocation of the expenses.  Thus, petitioners have failed to establish that Wolf Creek Farm is entitled to any deduction for utilities expenses.

c.  Depreciation

Wolf Creek Farm deducted $569 in 1995, $587 in 1996, and $575 in 1997 for depreciation of the farmhouse.  Section 167(a) allows a depreciation deduction from gross income for property used in the taxpayer's trade or business or held for the production of income.  Ordinarily, depreciation or amortization is available to an owner of an asset with respect to the owner's basis in the asset.  Wolf Creek Farm owned the homestead,

including the farmhouse.  One of the business activities of Wolf Creek Farm was the leasing of the homestead, including the farmhouse.  Thus, the farmhouse is property used in the corporation's trade or business.

We hold that Wolf Creek Farm is entitled to a deduction for depreciation of the farmhouse for each of the years at issue as claimed.

### d.  Taxes

Wolf Creek Farm deducted property taxes of $257 in 1995, $208 in 1996, and $190 in 1997 attributable to the farmhouse. Wolf Creek Farm owned the homestead.  Section 164(a)(1) allows the owner of property a deduction for real property taxes regardless of whether they are paid or incurred in a trade or business.  We hold, therefore, that Wolf Creek Farm may deduct property taxes as claimed in the years at issue.

### e.  Summary of Food and Lodging Expenses

To summarize, Wolf Creek Farm may deduct the following expenses for the years at issue:

|                            | 11/30/95 | 11/30/96 | 11/30/97 |
|----------------------------|----------|----------|----------|
| Property tax--house        | $257     | $208     | $190     |
| Property insurance--house  | 667      | 631      | --       |
| Depreciation--house        | 569      | 587      | 575      |
| Total                      | 1,493    | 1,426    | 765      |

Wolf Creek Farm may not deduct the following food and lodging expenses:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Food for employees | $2,692 | $2,722 | $2,441 |
| Utilities--house | 1,991 | 2,016 | 2,081 |
| Total | 4,683 | 4,738 | 4,522 |

3.   Inclusion of Payments in Mr. Tschetter's Gross Income

When a corporation makes an expenditure that primarily benefits the corporation's shareholders, the amount of the expenditure may be taxed to the shareholders as a constructive dividend.  Hood v. Commissioner, 115 T.C. 172 (2000); Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980); Am. Insulation Corp. v. Commissioner, T.C. Memo. 1985-436.  We have found that expenses for food and utilities paid by Wolf Creek Farm are Mr. Tschetter's expenses.  Petitioners contend that the payments are not constructive dividends because Mr. Tschetter was required to repay any amounts that Wolf Creek Farm could not deduct for Federal income tax purposes.  Petitioners cite Cepeda v. Commissioner, T.C. Memo. 1993-477, to support their position. Cepeda, however, is inapposite.  In that case, the taxpayers claimed that advances made by the corporation were loans rather than employee compensation or constructive dividends. Petitioners do not contend that the corporate payments of Mr. Tschetter's expenses were loans.

For Federal income tax purposes, a transaction will be characterized as a loan if there was "an unconditional obligation on the part of the transferee to repay the money, and an

unconditional intention on the part of the transferor to secure repayment." Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988). In the instant cases, when the payments were made there was no unconditional obligation on the part of Mr. Tschetter to repay a specific dollar amount to the corporation. His obligation to repay any of the payments was in general terms. The amount of repayment could not be determined when the payments were made. Any obligation to repay any amount could not arise before respondent disallowed the deduction for the expenses; i.e, when the Wolf Creek Farm notice of deficiency was issued in January 2001. Thus, the payments were not loans. Since the payments when made by Wolf Creek Farm did not constitute business expenses of the corporation or loans to Mr. Tschetter, the conclusion is inescapable that the payments constituted distributions by Wolf Creek Farm to Mr. Tschetter.

In N. Am. Oil Consol. v. Burnett, 286 U.S. 417, 424 (1932), the Supreme Court stated:

> If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

It is clear, therefore, under the claim of right doctrine, the amounts paid by Wolf Creek Farm in 1995, 1996, and 1997 were

taxable to Mr. Tschetter in those years.  See Pahl v. Commissioner, 67 T.C. 286, 289 (1976).

If a taxpayer is required to repay income recognized under the claim of right doctrine in an earlier tax year, section 1341 permits the taxpayer, in effect, to elect to compute his taxes for the year of repayment in a manner that gives the taxpayer the equivalent of a refund (without interest) of tax for the earlier year.  Specifically, section 1341(a)(5) permits the tax for the year of repayment to be reduced by the amount of the tax paid for the year of receipt that was attributable to the inclusion of the repaid amount in that year's gross income.  United States v. Skelly Oil Co., 394 U.S. 678, 682 (1969).  Section 1341, however, requires actual repayment, restoration, or restitution.  Chernin v. United States, 149 F.3d 805, 816 (8th Cir. 1998); Kappel v. United States, 437 F.2d 1222, 1226 (3d Cir. 1971); Estate of Smith v. Commissioner, 110 T.C. 12 (1998).

Although the directors of Wolf Creek Farm adopted a resolution that required Mr. Tschetter to repay amounts for which the corporation is disallowed a deduction, Mr. Tschetter does not claim that he has repaid the disallowed amounts.  Indeed, there is no evidence in the record to show that he did.  Therefore, section 1341 does not apply.  We hold that Wolf Creek Farm's payment of Mr. Tschetter's food and utilities expenses constitutes income to Mr. Tschetter.

Petitioners argue that the expenses are meals and lodging expenses excludable under section 119. We have found to the contrary. Thus, the costs of food and utilities are Mr. Tschetter's personal living expenses.

Personal, family, or living expenses are not deductible except as otherwise expressly permitted. Sec. 262. A taxpayer's expenses for his or her own meals and lodging are personal because they would have been incurred whether or not the taxpayer had engaged in any business activity. Christey v. United States, 841 F.2d 809, 814 (8th Cir. 1988); Moss v. Commissioner, 80 T.C. 1073, 1078 (1983), affd. 758 F.2d 211 (7th Cir. 1985). In order for personal living expenses to qualify as a deductible business expense under section 162(a), the taxpayer must demonstrate that the expenses were different from, or in excess of, what he would have spent for personal purposes. Sutter v. Commissioner, 21 T.C. 170, 173 (1953). Petitioners did not produce any bills, canceled checks, or testimony to substantiate any portion of the utilities expenses that relates to Mr. Tschetter's separate farming business. Thus, petitioners have failed to establish that Mr. Tschetter is entitled to a deduction for any portion of the expenses under section 162.[4]

---

[4]Except as otherwise provided, an individual is not allowed a deduction with respect to the use of a dwelling unit that is used by the individual as a residence. Sec. 280A(a). The individual, however, may deduct expenses allocable to portions of
(continued...)

4.  Rental Value of Residence

Mr. Tschetter leased the homestead, including the farmhouse, from Wolf Creek Farm.  Wolf Creek Farm received rent in the form of 30 percent of the calf crop and 40 percent of the other crops produced on the farm.  Mr. Tschetter included only his 70/60 percent of the crop revenues in his income.  He excluded the entire 30/40 percent paid to Wolf Creek Farm as rent, including the portion attributable to the farmhouse.  In effect, he deducted the portion of the rent paid for the farmhouse.  The rent of the farmhouse is his personal expense and is not deductible.  See sec. 262.

The farm lease does not specify that portion of the rent to be paid for use of the farmhouse.  Nor has Mr. Tschetter provided any evidence to show that portion of the rent properly attributable to the farmhouse.

The amount of the constructive dividends respondent determined in the Tschetter notice of deficiency exceeds the amount of the deductions disallowed in the Wolf Creek Farm notice of deficiency.  The record does not explain that excess.

---

[4](...continued)
the dwelling that are exclusively used for business purposes. Sec. 280A(c).  Mr. Tschetter did not argue that the utilities expenses are deductible under sec. 280A.  Therefore, we do not address the question of whether the utilities expenses may be deductible under that section.  We note, however, that Mr. Tschetter made no showing that the farmhouse, or any portion thereof, was used exclusively for business purposes.

Moreover, since the depreciation respondent disallowed as a deduction to Wolf Creek Farm was not an expenditure, we assume that adjustments in the Tschetter notice of deficiency did not include the depreciation.

We have computed the fair rental value of the farmhouse that was included in respondent's adjustment to Mr. Tschetter' income as follows:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Wolf Creek Farm notice of deficiency |  |  |  |
| Disallowed food & lodging deductions | $6,176 | $6,164 | $5,287 |
| Less depreciation on residence | 569 | 587 | 575 |
| Food & lodging expenditures | 5,607 | 5,577 | 4,712 |
|  |  |  |  |
| Tschetter notice of deficiency adjustment |  |  |  |
| for food & lodging provided by corporation | $6,163 | $6,218 | $6,001 |
| Food & lodging expenditures | 5,607 | 5,577 | 4,712 |
| Adjustment for rental value of residence | 556 | 641 | 1,289 |

Mr. Tschetter has not shown that the portion of the rent attributable to the farmhouse is less than the amounts for the years at issue, as computed above. We therefore hold that those amounts are properly included in Mr. Tschetter's income for the years at issue.

5.    Summary of Adjustments to Mr. Tschetter's Income

Mr. Tschetter's income from farming is increased by $556 in 1995, $641 in 1996, and $1,289 in 1997 to reflect the disallowance of deductions for the rental value of the farmhouse. In addition, payments by Wolf Creek Farm for food and utilities are included in Mr. Tschetter's income as constructive dividends

in the amounts of $4,683 in 1995, $4,738 in 1996, and $4,522 in 1997.

Issue 2.  Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that Wolf Creek Farm is liable for the accuracy-related penalty under section 6662(a).  As pertinent here, section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to negligence or disregard of rules or regulations.  Sec. 6662(b)(1).  Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

The penalty under section 6662(a) does not apply to any portion of an understatement of tax if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his/her proper tax liability for the year.  Id.  The good faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement.  Sec. 1.6664-4(b), Income Tax Regs.

Despite the fact that petitioners have the burden of proof, see supra note 3, petitioners have made no showing that they made an attempt to comply with the tax rules and regulations with regard to those deductions taken by Wolf Creek Farm for the years at issue which have been disallowed.  Hence, with respect to those deductions, petitioners have failed to show that Wolf Creek Farm was not negligent.  Nor have petitioners showed that they acted in good faith with respect to, or that there was reasonable cause for, the position they took.

Further, petitioners do not claim that they relied on Mr. Bleeker or any other professional as to the tax treatment of the expenses for food and lodging.[5]  Petitioners simply assert that the accuracy-related penalty does not apply because Wolf Creek Farm properly claimed the deductions under section 162(a) and Mr. Tschetter properly excluded the payments under section 119.  We have found to the contrary.

---

[5]Before the trial in these cases, respondent filed a motion to disqualify Mr. Bleeker from his representation of petitioners. Respondent's motion was based, in part, on the premise that, if petitioners contend that they reasonably relied on Mr. Bleeker's advice with respect to the proper tax treatment of the payments at issue, then Mr. Bleeker would be required to testify as a witness in the trial of these cases.  The Court held a telephone conference call with Mr. Bleeker and counsel for respondent to discuss respondent's motion.  During that call, Mr. Bleeker informed the Court that petitioners did not intend to raise reasonable reliance on a tax professional as a defense to the accuracy-related penalties.

Under these circumstances, we are compelled to hold that Wolf Creek Farm is liable for the accuracy-related penalty for the years at issue.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.